COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| | § | |
| | § | No. 08-10-00227-CV |
| IN THE ESTATE OF MELVIN J. ANDEREGG, DECEASED. | § | Appeal from the |
| | § | 198th Judicial District Court |
| | § | of Kimble County, Texas |
| | § | (TC# 09-3430) |

**O P I N I O N**

Melvin Anderegg's will bequeathed money and securities to his sister, Hazel Davitt, and the remainder of his property to his great-nephew, Bryan Cosper and Bryan's wife, Marie Cosper. The Cospers were named as executors of the estate. Following Anderegg's death, Davitt filed a motion to remove the Cospers as executors, accusing them of embezzlement. The Cospers contested the removal and sought a declaratory judgment regarding the correct interpretation of the will. They also sought additional compensation for their services as executors. The trial court entered a judgment finding that the Cospers committed gross misconduct, removing them as executors, determining that they did not defend the motion to remove in good faith, denying their request for additional compensation, requiring all debts and expenses of the estate to be paid *pro rata* from the entire estate, and awarding Anderegg's State of Texas retiree death benefit and income tax refund to Davitt.

The Cospers appeal, raising three issues. We affirm.

**Will Interpretation**

The Cospers' first two issues require interpretation of the will. When interpreting a will,

our focus is on the testator's intent, which, absent an ambiguity, must be ascertained solely from

the will's language. *See San Antonio Area Found. v. Lang*, 35 S.W.3d 636, 639 (Tex. 2000). In

this case, neither party relies on extrinsic evidence.[1] Accordingly, whether Anderegg's will is

ambiguous or unambiguous, we must determine its meaning from the words used.

After an introductory paragraph, Anderegg's will has three sections, each serving a

separate purpose. The first section provides for the payment of debts and expenses. The second

disposes of Anderegg's property. The third governs administration of the estate, by appointing

executors, describing the executors' powers, and providing for probate of the will. The sections

are worded as follows:

> FIRST: I do hereby direct that all of my just debts and all expenses of my last illness, funeral, and the administration of my estate shall be paid out of my estate by my executrix hereinafter appointed as soon after my death as may be practicable.

> SECOND: Subject to the provisions of the foregoing paragraph hereof, I do hereby give and bequeath, all monies I may have at the time of my death, be they in the form of cash, checking accounts or savings accounts, all stocks, bonds, annuities, etc., and any accounts I may have with A. G. Edwards & Sons, Inc., Farm Bureau or others to my beloved sister, HAZEL DAVITT.

> In the event that my said sister, HAZEL DAVITT should predecease me, the property that would have otherwise been distributed to her shall instead pass to her children in equal shares, or their children should a child of Hazel Davitt also predecease me.

> All the rest and residue of my estate being primarily the 115.20 acres of land, more or less, I own in Kimble County, Texas, all personal property located on such real estate to included [sic], but not limited to all my guns, livestock,

---

[1] The attorney who drafted the will testified regarding its meaning, but his testimony indicated that he did not know the answers to the questions of intent and interpretation raised by the parties. Neither side refers to his testimony on appeal.

vehicles, buck horns, four wheeler, etc. I give, devise, and bequeath to BRYAN and MARIE COSPER.

THIRD: I do hereby appoint the said BRYAN and MARIE COSPER, Independent Executors . . . .

In their first issue, the Cospers argue that the trial court erred in requiring that all debts and expenses of the estate be paid *pro rata* from all of the estate's assets. Debts and expenses are generally paid from the residuary estate. *See* TEX.PROB.CODE ANN. § 322B (West 2003); *Sinnott v. Gidney*, 322 S.W.2d 507, 511 (Tex. 1959). The Probate Code provides that a decedent's property is liable for debts and expenses of administration other than estate taxes, and that bequests abate in the following order: property passing by intestacy; personal property of the residuary estate; real property of the residuary estate; general bequests of personal property; general devises of real property; specific bequests of personal property; and specific devises of real property. TEX.PROB.CODE ANN. § 322B(a). The statute further provides that the decedent's intent, as expressed in a will, controls over the statutory order of abatement. *Id*. at § 322B(d).

The question presented here is whether Anderegg's will expresses an intent to deviate from the statutory order of abatement. The first section of Anderegg's will states that debts and expenses "shall be paid out of my estate." The Probate Code defines "estate" as "the real and personal property of a decedent . . . ." TEX.PROB.CODE ANN. § 3(*l*)(West Supp. 2011); *see also Lang*, 35 S.W.3d at 640 (citing Probate Code's definition of "real property" in construing the meaning of the term in a will). Thus, the word encompasses all of Anderegg's property. The first section, standing alone, supports the trial court's decision.[2]

---

[2] It could be argued that the instruction to pay debts and expenses out of the estate is too general to alter the statutory abatement order. *See Sinnott*, 322 S.W.2d at 511 (applying common law presumption that debts should be paid out of the residuary where will contained instruction to

-3-

In arguing that the trial court erred in charging their devise with a *pro rata* portion of the debts and expenses, the Cospers rely principally on the words "[s]ubject to the provisions of the foregoing paragraph . . . ." These words appear in the second section, immediately before the bequest to Davitt. The Cospers believe that this wording demonstrates Anderegg's intent that debts and expenses be deducted from Davitt's bequest. Furthermore, because the wording only appears before the bequest to Davitt, and not before the devise and bequest to them, they argue that all of the debts and expenses should be deducted solely from Davitt's bequest.

Considering the overall structure of the will, we believe the trial court's interpretation is better than the one offered by the Cospers. The words appear at the beginning of the second section, which contains all of the devises and bequests. Accordingly, they apply to the entire section, not merely to Davitt's bequest.

In their second issue, the Cospers argue that the trial court erred in determining that Anderegg's lump sum death benefit and income tax refund should be paid to Davitt. The will gives Davitt "all monies I may have at the time of my death, be they in the form of cash, checking accounts or savings accounts, all stocks, bonds, annuities, etc., and any accounts I may have with A. G. Edwards & Sons, Inc., Farm Bureau or others . . . ." The Cospers contend that the death benefit and tax refund do not fit within the literal meaning of "monies I may have at the time of my death," "cash," "stocks," "bonds," "annuities," or "accounts" of any type.

---

pay debts and expenses from the "estate"); *Warren v. Smith*, 620 S.W.2d 725, 727 (Tex.Civ.App.-- Dallas 1981, writ ref'd n.r.e.)(same). The Cospers erroneously suggest that they would fare better under the statutory abatement order because they were given a specific devise of real property. In fact, they were given the residuary estate. *See Sinnott*, 322 S.W.2d at 509, 511-12 (holding that "[a]ll of the rest, residue and remainder of my estate, which is real property situated in the State of Texas" was a residuary devise, not a general or specific devise of real estate). The residuary estate abates before general and specific bequests and devises. *See* TEX.PROB.CODE ANN. § 322B(a).

"Courts have generally construed the testamentary terms 'money' and 'cash' to mean only coins, paper money and demand deposits." *W. Tex. Rehab. Ctr. v. Allen*, 810 S.W.2d 870, 873 (Tex.App.--Austin 1991, no writ); *see also Thompson v. Thompson*, 236 S.W.2d 779, 790-91 (Tex. 1951)(holding that "all cash money that may be on hand at the time of my decease" did not include certificate of deposit because it was not payable on demand and the money was not available to the testator at the time of his death). However, the Texas Supreme Court has noted that "money" is a word "of flexible meaning that ordinarily refers to cash or coin, but it has often been construed in will cases to mean wealth or property." *Stewart v. Selder*, 473 S.W.2d 3, 9 (Tex. 1971).

The Cospers assert that Anderegg defined what he meant by "monies" when he provided the description "be they in the form of cash, checking accounts or savings accounts." But the will also gives Davitt brokerage accounts and "all stocks, bonds, annuities, etc." Although the death benefit and tax refund are not literally securities or annuities, the abbreviation "etc." suggests that Anderegg contemplated that Davitt would receive other items that were neither securities nor annuities. This abbreviation means "[a]nd other things" and usually "indicates additional, unspecified items in a series." BLACK'S LAW DICTIONARY 632 (9th ed. 2009). All of the specific items given to Davitt are relatively liquid financial assets. The death benefit and tax refund fall into this category. Given that "money" can have a flexible meaning, that the bequest uses the abbreviation "etc.," that the will gives Davitt financial assets of various kinds, and that the death benefit and tax refund are of a similar nature, we believe that the death benefit and tax refund were properly awarded to Davitt.

This interpretation is reinforced by the remainder of the will. The will describes the

residuary estate, which was given to the Cospers, as consisting of illiquid non-financial assets, such as land, livestock, and vehicles. This contrasts with the relatively liquid financial assets that were given to Davitt. This distinction suggests that Anderegg contemplated that Davitt would receive his "monies" in the broad sense of the word.

The Cospers argue that the maxim *expressio unius est exclusio alterius*, "meaning that the naming of one thing excludes another," applies here. *CKB & Assocs., Inc. v. Moore McCormack Petroleum, Inc.*, 734 S.W.2d 653, 655 (Tex. 1987). More precisely, this maxim refers to the supposition that "the expression in a contract of one or more things of a class implies the exclusion of all not expressed, even though all would have been implied had none been expressed." *OXY USA, Inc. v. Sw. Energy Prod. Co.*, 161 S.W.3d 277, 285 (Tex.App.--Corpus Christi 2005, pet. denied). Even when applicable, the maxim is merely an aid to interpretation, and is not conclusive. *See CKB & Assocs.*, 734 S.W.2d at 655. Here, Anderegg's use of the term "etc." negates the idea that he intended the listed items to be exclusive.

**Good Faith Defense**

Executors may be removed if they misapply or embezzle property of the estate or if they commit some other type of gross misconduct. TEX.PROB.CODE ANN. § 149C(a)(2), (5)(West Supp. 2011). In this case, Davitt sought to remove the Cospers on the grounds of embezzlement and gross misconduct. After hearing the evidence, the trial court found that the Cospers committed gross misconduct and removed them as executors. The Cospers do not appeal the finding that they committed gross misconduct or the decision to remove them. In their third issue on appeal, however, they challenge the trial court's refusal to charge the estate for the attorney's fees they incurred in defending against removal.

-6-

The same statute that provides for an executor's removal also provides, "An independent executor who defends an action for his removal in good faith, whether successful or not, shall be allowed out of the estate his necessary expenses and disbursements, including reasonable attorney's fees, in the removal proceedings." TEX.PROB.CODE ANN. § 149C(c). Here, the trial court found that the Cospers did not defend in good faith. The Cospers argue that the evidence is legally and factually insufficient to support this finding.[3]

Bryan Cosper testified that Anderegg had given Marie Cosper a key to his safe. After Anderegg died, they found a credit card in the safe and "figured he left that in the safe to be used." The Cospers proceeded to use the credit card for personal expenses. For example, they bought tires, made a truck payment, purchased college text books for their daughter, and charged various restaurant meals to the credit card. According to the Cospers, the attorney who drafted the will initially told them that they could use the credit card, but two days later, the attorney changed his mind and said not to use it. Marie testified that she believed this was good advice. Nevertheless, the majority of the charges occurred after the attorney said not to use the credit card.

Bryan Cosper insisted that he was not a thief. He admitted that he signed the court's

---

[3] The Cospers' brief does not include a standard of review, but it states the third issue as follows: "There was no evidence, and insufficient evidence, that the Cospers defended the removal action in bad faith. Such finding was against the overwhelming preponderance of the evidence." Although it is unclear, the wording of the issue suggests that the Cospers believe that Davitt had the burden of establishing that they acted in bad faith. The language of the statute suggests that the Cospers had the burden of establishing good faith. It should be easier for the Cospers to obtain a reversal under their interpretation. *See In re B.A.W.*, 311 S.W.3d 544, 548-49 (Tex.App.--El Paso 2009, no pet.)(explaining how the standard of review for sufficiency of the evidence depends on whether the appellant had the burden of proof). Even under their lenient standard, we find the evidence legally and factually sufficient. Accordingly, we consider the issue as phrased by the Cospers and find it unnecessary to determine the correct standard of review.

written instructions for executors, but he did not read the instructions. The instructions said not to borrow money from the estate. Marie Cosper stated that the judge went over the instructions with them and that she understood the instructions. Although she needed the money and she intended to pay it back, she knew she was "doing wrong" and she "didn't think it was right" when she charged personal expenses to the credit card.

The attorney testified that he did not remember whether he told the Cospers that they could use the credit card. He could not recall ever giving that advice to an executor. The attorney was present when the judge gave the Cospers their instructions and he thought they understood the instructions.

In October 2009, the attorney advised the Cospers by letter that they needed to come up with a plan "as soon as possible" to pay back the nearly $6,000 that they had admitted borrowing from the estate. Yet the money had not been paid back by the time of the hearing in April 2010. Bryan Cosper testified that he intended to reimburse the estate once he received his compensation for serving as executor.

The Cospers admitted that they owed the estate $5,439.41. They showed this amount on their written estate inventory as "an advance against Executor's fees." Marie Cosper kept track of the time and mileage that she and Bryan expended on the estate. Based on twelve dollars per hour and fifty-five cents per mile, she determined that they were entitled to $5,583.05 for handling estate matters.[4]

---

[4] The usual compensation for an executor is five percent of sums received and paid out in cash, but if this compensation is deemed to be "unreasonably low," the court can set compensation in a different amount. *See* TEX.PROB.CODE ANN. § 241(a)(West 2003). The trial court denied the Cospers' request for additional compensation.

The Fourteenth Court of Appeals has held that "an executor acts in good faith when he or she subjectively believes his or her defense is viable, if that belief is reasonable in light of existing law. This standard should protect all but the plainly incompetent executors or those who willfully breach their fiduciary duties." *Lee v. Lee*, 47 S.W.3d 767, 795 (Tex.App.--Houston [14th Dist.] 2001, pet. denied). The Cospers argue that under the *Lee* standard, there is no evidence that they defended against removal in bad faith. We disagree.

The evidence is both legally and factually sufficient to support a finding that the Cospers defended in subjective bad faith. They recognized that the judge instructed them not to borrow from the estate, they acknowledged that they continued charging personal expenses to the credit card after being advised by counsel not to do so, and Marie admitted that she knew her actions were wrong. From this evidence, the court could have inferred that the Cospers did not believe that their defense to removal was viable.

The evidence is also legally and factually sufficient to support a finding of objective bad faith. The statute allows executors to be removed if they misapply or embezzle estate property or if they commit gross misconduct. *See* TEX.PROB.CODE ANN. § 149C(a)(2), (5). In 2009, the Texas Supreme Court held that "misapplication" and "embezzlement," as used in this statute, refer to "subterfuge or wrongful misuse." *Kappus v. Kappus*, 284 S.W.3d 831, 835-36 (Tex. 2009). The court held that "gross misconduct" means glaringly obvious or flagrant misconduct. *Kappus.*, 284 S.W.3d at 836. Appellate courts had previously held that "gross misconduct" and "gross mismanagement" include any intentional commission of a wrongful act. *See, e.g., In re Estate of Casida*, 13 S.W.3d 519, 524 (Tex.App.--Beaumont 2000, no pet.). These cases constitute the existing law when the Cospers defended against removal in 2010. Considering the

admissions they made in their testimony, any subjective belief in the viability of their defense to removal was not reasonable in light of this existing law.

## Conclusion

All of the Cospers' issues are overruled, and the judgment of the trial court is affirmed.


February 1, 2012

CHRISTOPHER ANTCLIFF, Justice

Before McClure, C.J., Rivera, and Antcliff, JJ.