

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| LUCCHESE BOOT COMPANY, LUCCHESE, INC., JOSE ANGEL VELARDE, and JOSE ANGEL VALADAZ , | § § § § § § § § | No. 08-14-00230-CV |
| Appellants, | | Appeal from the |
| | | 34th District Court |
| v. | | of El Paso County, Texas |
| HECTOR RODRIGUEZ, | | (TC# 2008-797) |
| Appellee. | | |

**O P I N I O N**

Appellants Lucchese Boot Company, Lucchese, Inc., Jose Angel Velarde, and Jose Angel Valadaz seek reversal of the trial court's order denying its motion to compel arbitration against former employee Hector Rodriguez. We reverse and remand.

**BACKGROUND**

In 2007, Rodriguez filed a non-subscriber negligence suit against Lucchese after allegedly suffering work-related injuries. Lucchese initially sought to compel arbitration against Rodriguez under the terms of its Area Brands Texas Injury Benefit Plan (the Benefit Plan). The trial court denied Lucchese's motion to compel Rodriguez to arbitrate. Lucchese filed for a writ of mandamus compelling arbitration. We denied the writ on the basis that the Benefit Plan's arbitration agreement was illusory. *In re Lucchese Boot Co.*, 324 S.W.3d 211, 212-13

(Tex.App.--El Paso 2010, orig. proceeding).

Lucchese next sought to compel arbitration based on a different agreement contained in its Problem Resolution Program (the Program). The trial court struck Lucchese's motion on the basis that Lucchese had either waived, or was estopped from asserting, its right to seek arbitration after initially seeking it under the Benefit Plan. Lucchese appealed, and we reversed the trial court's strike order and reinstated Lucchese's motion, holding that Lucchese did not waive its right to seek arbitration and that it was not estopped from offering alternate bases for its arbitration request. *Lucchese, Inc. v. Rodriguez*, 388 S.W.3d 354, 362-64 (Tex.App.--El Paso 2012, no pet.). On remand, the trial court denied Lucchese's motion to compel arbitration under the Program. Lucchese appealed. We have interlocutory jurisdiction to entertain this appeal under TEX.CIV.PRAC. & REM.CODE ANN. § 51.016 (West 2015).

### DISCUSSION

In one issue, Appellants maintain the trial court erred by failing to compel arbitration, either because questions of the Program's enforceability were reserved for the arbitrator alone or because Rodriguez cannot present any valid contractual defenses against enforcement.[1]

### *Standard of Review*

We review mixed questions of fact and law in arbitration cases such as this for abuse of discretion, deferring to the trial court's factual determinations and reviewing pure questions of law *de novo*. *Delfingen US-Tex., L.P., v. Valenzuela*, 407 S.W.3d 791, 797 (Tex.App.--El Paso 2013, no pet.). We review the enforceability of an arbitration agreement *de novo* as a question of

---

[1] Appellant's brief also addresses the applicability of the FAA to this dispute and Rodriguez's constitutional challenge to the FAA under the Tenth Amendment to the United States Constitution. Rodriguez's brief raises neither of these points. We agree that the FAA applies to this case because there is evidence in the record to show that Lucchese engages in interstate commerce. *See Vista Quality Mkts. v. Lizalde*, 438 S.W.3d 114, 121-22 (Tex.App.--El Paso 2014, no pet.). We decline to address any Tenth Amendment challenges to the FAA since Rodriguez failed to raise them in his brief on appeal. *But see In re Odyssey Healthcare, Inc.*, 310 S.W.3d 419, 423-24 (Tex. 2010)(orig. proceeding)(holding that the FAA does not violate the Tenth Amendment).

2

law. *In re 24R, Inc.*, 324 S.W.3d 564, 566 (Tex. 2010)(orig. proceeding).

"A party seeking to compel arbitration must (1) establish the existence of a valid arbitration agreement; and (2) show that the claims asserted are within the scope of the agreement." *Delfingen*, 407 S.W.3d at 797. A trial court abuses its discretion when it "refuses to compel arbitration under a valid and enforceable arbitration agreement[.]" *In re 24R, Inc.*, 324 S.W.3d at 566.

### *Relevant Contract Language*

To better ground our analysis, we set out the following relevant excerpts of the Problem Resolution Program below:

> **Agreement to Submit Disputes to Arbitration.** The Company and the Employee . . . recognize that differences of opinion can, from time-to-time, arise among individuals, including between an employee and his employer, and that, ultimately, some such disagreements can only be fairly resolved by a neutral decision-maker. The Company believes, however, that resort to a neutral Arbitrator is a legally-sanctioned alternative to the judicial system which is fairer to the parties, yields a speedier final resolution, and is less expensive to both the Employee and the Company. The Company therefore establishes this Problem Resolution Program (the 'Program'), waives its right to a trial before a judge or a jury in the event of any Covered Employment Dispute as defined below (hereinafter, 'Covered Dispute'), and agrees to submit any such dispute to final and binding arbitration. In exchange for this waiver of its rights, the Company requires, as a condition of employment/continued employment, that each of its Employees waive his right to a trial before a judge or a jury in the event of any Covered Dispute and agree to submit such dispute to final and binding arbitration. In other words, in the case of a Covered Dispute, the Company and the Employee agree to submit the Dispute to binding arbitration, unless both the Employee and the Company waive such a right in writing prior to the initiation of any litigation arising out of said Covered Dispute.

> .     .     .

> **Covered Disputes.** Covered Disputes which are subject to the exclusive provisions of the Program include only those which involve legally-protected rights which the Employee may now or in the future have against the Company or its officers, directors, shareholders, employees, or agents in their personal or official capacities, as well as any claims which the Company may now or in the future have against the Employee, including, but not limited to, matters arising

3

out of the application for employment or an employment termination, except as expressly excluded under the heading of "Claims Not Covered" below:

The disputes covered by the Program include, but are not limited to:

- claims for wrongful failure to hire;
- claims or breach of any contract, covenant, or warranty (express or implied);
- tort claims (including, but not limited to, claims for physical, mental or psychological injury, without regard to whether such injury was allegedly sustained in the course and scope of employment, and claims for defamation);
- claims for wrongful termination (including, but not limited to, retaliatory discharge claims under chapter 451 of the Texas Labor Code);
- claims for harassment, including, but not limited to, sexual harassment;
- claims for discrimination (including, but not limited to, claims based on race or color, national origin, religion, sex, age, medical condition or disability);
- claims for benefits under any employee benefit plans sponsored by the Company (after exhausting administrative remedies under the terms of such plans); and
- claims for violations of any other noncriminal federal, state, or other governmental law, statute, regulation or ordinance.

This includes claims which are brought by or against Employee or his representatives, successors, spouse or heirs.

**Claims Not Covered.** The only claims or disputes not covered by the Program are as follows:

1. any claim by Employee for benefits under a plan or program which provides its own arbitration procedure;
2. any criminal complaint or proceeding;
3. restitution by an employee for a criminal act for which he has been found guilty, has pleaded guilty or no contest or nolo contendere, or for which he has been subject to any kind of deferred adjudication program;
4. any claim by the Company for injunctive or other equitable relief for Employee's alleged violation of contract, covenant against competition, unfair competition or the use or disclosure of trade secrets or other confidential information;
5. any claim for benefits arising under the workers' compensation laws of any state;
6. any claim for unemployment compensation; and

4

7. any dispute involving Employee's work schedule, vacation, sick days, work assignments, or shift assignments, and any disagreement with co-workers other than those involving Covered Disputes as described above.

Neither Employee nor the Company may submit items 1 through 7 above to arbitration under this Program.

**Procedures for Conduct of Arbitrations.** Except to the extent that any provision of said Rules is inconsistent with the Program provisions set forth in this document or except where a provision of said Rules is waived in a writing signed by representatives of both the Company and the Employee, arbitrations under this Program shall be conducted pursuant to the TAMS Employment Arbitration Rules.

# I.
## *ARBITRABILITY AND SCOPE*
### A.
### *Who Decides If an Arbitration Agreement Exists?*

In its first sub-issue, Appellant argues that the trial court erred by not compelling arbitration because the agreement itself strips away the trial court's ability to decide whether the agreement's terms are valid. We disagree.

Ordinarily, the trial court retains the power to rule on so-called "gateway" issues such as whether an arbitration agreement exists or is enforceable. *IHS Acquisition No. 131, Inc. v. Iturralde*, 387 S.W.3d 785, 793 (Tex.App.--El Paso 2012, no pet.). However, through the use of binding covenants in an agreement, parties may agree to submit even fundamental gateway issues to arbitration. *Id*. We apply ordinary contract law principles in interpreting these agreements. *Id*. at 791. In conducting the gateway inquiry, we do not ordinarily pass on any issues relating to the underlying arbitration agreement; rather, we look at how broadly the scope of the arbitration clause sweeps to see if subsumes even gateway issues, or is limited only to certain classes of disputes between the parties. If the arbitration clause sweeps broadly enough to subsume gateway issues into an arbitral dispute, and there is evidence that both parties agreed

5

to the covenants, then the trial court should compel arbitration and leave issues of validity and enforceability to the arbitrator. *Iturralde,* 387 S.W.3d at 793.

Lucchese maintains that the Program's incorporation by reference of the TAMS' procedural rules—which allow an arbitrator to rule on the issue of his own jurisdiction[2]—definitively establishes the parties' intent to submit even gateway issues to arbitration. Our sister courts have found that a broadly-worded arbitration clause, coupled with incorporation by reference of rules giving an arbitrator power to rule on his own jurisdiction, is enough to demonstrate the parties' intent to strip the trial court of all power and submit even gateway issues of arbitrability to an arbitrator. *See Schlumberger Tech. Corp. v. Baker Hughes Inc.*, 355 S.W.3d 791, 802-03 (Tex.App.--Houston [1st Dist.] 2011, no pet.); *Saxa Inc. v. DFD Architecture Inc.*, 312 S.W.3d 224, 228-29 (Tex.App.--Dallas 2010, pet. denied); *In re Rio Grande Xarin II, Ltd.*, No. 13-10-00115-CV, 2010 WL 2697145, at *8-*9 (Tex.App.--Corpus Christi July 6, 2010, pet. dism'd)(mem. op.).

Even so, the "majority view does not mandate that arbitrators decide arbitrability in all cases where an arbitration clause incorporates" an arbitration organization's procedural rules by reference. *Haddock v. Quinn*, 287 S.W.3d 158, 173 (Tex.App.--Fort Worth 2009, orig. proceeding)[Internal citations and quotation marks omitted]. This case is distinguishable from the other incorporation cases Appellant cites. In those cases, the arbitration agreements either applied specifically to gateway issues or otherwise purported to apply to *all* disputes between an

---

[2] TAMS Rule A-8 provides in part:

A-8 Jurisdiction

(a) The arbitrator shall have the power to rule on the issue of jurisdiction, including any objection with respect to the existence, scope or validity of the arbitration agreement.

(b) The arbitrator shall have the power to determine the existence or validity of a contract which contains an arbitration clause.

6

employer and employee, meaning that procedural rules giving an arbitrator the power to rule on whether a claim is even subject to arbitration were consistent with the parties' intent to completely exclude the courts from the dispute-resolution process. *See Saxa, Inc.*, 312 S.W.3d at 226 (arbitration clause stated that "[a]ny claim, dispute or other matter in question arising out of or related to the contract shall be subject to arbitration.")[Internal quotation marks omitted]; *Schlumberger Tech. Corp.*, 355 S.W.3d at 802 (Resolution Agreement setting out arbitration terms specifically stated that "disputes relating to the interpretation, construction, alleged breach of this [Resolution] Agreement, [and] the Procedure Agreement" would be solved by process set out in Resolution Agreement; Resolution Agreement pointed to Procedure Agreement process; Procedure Agreement process incorporated AAA Commercial Arbitration Rules by reference); *In re Rio Grande Xarin II, Ltd.*, 2010 WL 2697145, at *1 (arbitration agreement stated that "[i]f a controversy *arises out of this Agreement* . . . or the transaction contemplated herein, Buyer, Seller[,] and Agent agree that such controversy shall be settled by final, binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association . . . ")[3] [Emphasis added].

By contrast, here, the agreement establishes the scope of arbitrable issues as consisting of a certain class of "Covered Disputes" which "include only those [disputes] which involve legally-protected rights which the Employee may now or in the future have against the Company

---

[3] We recognize that the Fifth Circuit, in interpreting a contract under Texas law, appears to have held that under this State's law, mere incorporation by reference of arbitration rules "presents clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012). We respectfully disagree. Incorporation of an arbitration organization's jurisdictional rules is one factor to consider in determining the parties' intent, but it is by no means dispositive. *Haddock*, 287 S.W.3d at 172. To the extent other federal circuits have also determined that incorporation of arbitration rules clearly shows the parties' intent to delegate gateway issues to an arbitrator, *see, e.g., Fallo v. High–Tech Inst.*, 559 F.3d 874, 878 (8th Cir. 2009); *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1372-73 (Fed.Cir. 2006), we note that even under the FAA, the threshold question of what a contract says is a matter of state interpretational law. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985 (1995); *ReadyOne Indus., Inc. v. Carreon*, 458 S.W.3d 621, 623-24 (Tex.App.--El Paso 2014, no pet.). Thus, we are not bound by those court's decisions interpreting other states' laws in reaching our decision today.

or its officers, directors, shareholders, employees, or agents in their personal or official capacities, as well as any claims which the Company may now or in the future have against the Employee[.]" Further, while the agreement purports that a list of disputes contained in the Covered Disputes section is purely illustrative, the agreement also goes on to explicitly exclude a large class of "Claims Not Covered" that "[n]either Employee nor the Company may submit . . . to arbitration under this Program[,]" including *inter alia* restitution for an employee's criminal acts, "any claim by the Company for injunctive or other equitable relief for Employee's alleged violation of contract . . . [,]" or "any dispute involving Employee's work schedule, vacation, sick days, work assignments, or shift assignments[.]"

In light of the arbitration agreement's narrow application, incorporation of the TAMS rules giving an arbitrator the ability to review his own jurisdiction or reassess an agreement's validity is not dispositive. Appellant placed substantive restraints on the arbitrator's power by limiting the scope of the arbitration agreement to include only certain enumerated disputes and explicitly precluding submission of other disputes to arbitration. We presume as a matter of law that the trial court retained the power to decide gateway issues absent clear, explicit evidence to the contrary. *Iturralde*, 387 S.W.3d at 793. Given that the agreement's plain language purports to restrict the arbitrator's power to hear only certain classes of disputes, we will not read an unwritten clause into the agreement that enlarges the arbitrator's ability to rule on unenumerated gateway issue disputes based on silence or mere incorporation by reference of general arbitration rules. *See Haddock*, 287 S.W.3d at 172*; In re Estate of Anderegg*, 360 S.W.3d 677, 681 (Tex.App.--El Paso 2012, no pet.)(under the maxim *expressio unius est exclusio alterius*, "the expression in a contract of one or more things of a class implies the exclusion of all not expressed")[Internal quotation marks omitted]; *Grimes v. Walsh & Watts, Inc.*, 649 S.W.2d 724,

8

727 (Tex.App.--El Paso 1983, writ ref'd n.r.e.)(courts cannot read implied provisions into contracts absent evidence the covenant "so clearly within the contemplation of the parties that they deemed it unnecessary to express it")[Internal citation omitted].

Simply put, the TAMS rules may give an arbitrator the ability to decide if an agreement is valid, but the terms of the agreement itself govern whether the arbitrator gets to decide this question in the first instance. Here, the parties did not express a clear intent to submit gateway issues to an arbitrator, and the trial court properly retained jurisdiction to rule on arbitrability.

## B.
### *Proper Parties to Arbitration*

We next discuss whether the arbitration agreement applies only to Lucchese, or to defendants Velarde and Valadaz as well. Rodriguez maintains that the trial court's judgment was proper as to Velarde and Valadaz, since neither of them were parties to the contract between Lucchese and Rodriguez. Lucchese counters that Velarde and Valadaz are entitled to enforce the arbitration agreement as third-party beneficiaries. We agree.

Generally, "parties must sign arbitration agreements before being bound by them." *In re Rubiola*, 334 S.W.3d 220, 224 (Tex. 2011)(orig. proceeding). "Arbitration agreements apply to nonsignatories only in rare circumstances." *Id.* (citing *Bridas S.A.P.I.C. v. Gov't of Turkm.*, 345 F.3d 347, 355, 358 (5th Cir. 2003). However, "[a] third-party beneficiary may enforce a contract to which it is not a party if the parties to the contract intended to secure a benefit to that third party and entered into the contract directly for the third party's benefit." *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 677 (Tex. 2006). "[T]he question of who is actually bound by an arbitration agreement is ultimately a function of the intent of the parties, as expressed in the terms of the agreement." *In re Rubiola*, 334 S.W.3d at 224 [Internal quotation marks and alterations omitted].

9

Rodriguez correctly cites *In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185 (Tex. 2007)(orig. proceeding) for the proposition that "arbitration is not required merely because two claims arise from the same transaction." *Id.* at 192. He also contends that *In re Merrill Lynch Trust Co.* establishes that Velarde and Valadaz cannot force him to arbitrate his claims against them under either an equitable estoppel theory or a concerted-misconduct estoppel theory. We need not delve into any complex estoppel issues because the plain terms of this agreement are clear. The Covered Disputes section of the Program Agreement explicitly includes claims "against the Company or its officers, directors, shareholders, employees, or agents in their personal or official capacities[.]" Although Velarde and Valadaz were not signatories to the Program Agreement, the scope of the agreement's coverage gives them, as Lucchese employees, the right to seek arbitration. The language here clearly establishes that they are third-party beneficiaries under the Program Agreement. *See In re Palm Harbor Homes, Inc.*, 195 S.W.3d at 674 (homebuyer must arbitrate claims against home manufacturer because terms of arbitration contract between the homebuyer and a seller explicitly stated in "inured to the benefit" of the manufacturer).

Velarde and Valadaz are proper parties to the arbitration agreement, and their ability to seek arbitration rises and falls in tandem with Lucchese.

## II.
### CONTRACT

Having dealt with the gateway issues, we next turn to the substantive issues. In its second sub-issue, Lucchese[4] asserts that it proved the existence of a valid arbitration agreement in the trial court, and that Rodriguez failed to establish any meritorious contract defenses. As such, the trial court erred in failing to compel arbitration. We agree.

---

[4] For the purposes of the remainder of this opinion, we will refer to the appellants collectively as "Lucchese."

## A.
### *Does An Agreement Exist?*

In defense of the trial court's judgment, Rodriguez raises two alternate reasons why a binding arbitration contract never formed between the parties.[5]  First, Rodriguez contends no contract formed because the agreement rested on an illusory promise from Lucchese.  Second, Rodriguez maintains that the contract's terms were not definite enough to show the parties had a meeting of the minds as to all essential terms.

## 1.
### Illusoriness

We first address Rodriguez's illusoriness point.  Rodriguez maintains that the language of the agreement gives Lucchese the unilateral right to terminate the agreement at any time, rendering Lucchese's promise to arbitrate illusory and causing contract formation to fail for lack of consideration.  However, Rodriguez cites to and directs his argument entirely at the arbitration agreement from the Benefit Plan, which is not the subject of this appeal.  Here, we review only the arbitration agreement set out in the Problem Resolution Program.  Rodriguez makes no reference to the Program's arbitration language in his brief.  Because Rodriguez failed to explain how the language in the Program's arbitration agreement rendered it illusory, we find that Rodriguez has waived his illusoriness defense on appeal.

## 2.
### Meeting of the Minds

Rodriguez next maintains that the trial court's judgment should be upheld because Appellant failed to establish that all parties had a "meeting of the minds" on all essential terms of

---

[5] As we stated previously, the trial court should compel arbitration where a movant establishes (1) the existence of a valid arbitration contract and (2) that a claim falls within the scope of that contract.  *Iturralde*, 387 S.W.3d at 793.  Rodriguez does not argue that his injury falls outside the scope of the arbitration agreement.  We thus assume that the parties do not dispute Prong #2 of the arbitration test, i.e., the fact that this type of injury is covered by the arbitration agreement.

the arbitration agreement. Tied in with this argument is his assertion that the terms of the arbitration agreement are ambiguous. We address these two points jointly.

"A meeting of the minds is necessary to form a binding contract." *David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 450 (Tex. 2008). "Parties form a binding contract when the following elements are present: (i) an offer; (ii) an acceptance in strict compliance with the terms of the offer; (iii) a meeting of the minds; (iv) each party's consent to the terms; and (v) execution and delivery of the contract with the intent that it be mutual and binding." *Karns v. Jalapeno Tree Holdings, L.L.C.*, 459 S.W.3d 683, 692 (Tex.App.--El Paso 2015, pet. denied). "Although often treated as a distinct element, meeting of the minds is a component of both offer and acceptance measured by what the parties said and did and not on their subjective state of mind." *Id.* [Internal quotation marks omitted]. "In order to be legally binding, a contract must be sufficiently definite in its terms so that a court can understand what the promisor undertook." *T.O. Stanley Boot Co., Inc. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992). "The material terms of the contract must be agreed upon before a court can enforce the contract." *Id.* "Each contract should be considered separately to determine its material terms." *Id.*

Rodriguez avers that the essential terms of the arbitration agreement are too ambiguous to determine from the writings in the record; thus, no contract could have ever formed because the parties must not have mutually understood the other's terms. In making this argument, Rodriguez does not maintain that the Program's arbitration agreement is ambiguous on its face. Rather, he contends that the Program's arbitration agreement becomes ambiguous when read in light of the Benefit Plan's arbitration agreement, since the two agreements irreconcilably conflict on material terms such as who will conduct an arbitration: TAMS or the American Arbitration Association.

We first note that unless the Benefit Plan was incorporated by reference into the Program Agreement, it constitutes parol evidence that must be excluded in contradicting the Program Agreement's terms unless the Program Agreement is ambiguous. In determining whether a contract is ambiguous, we first look only to the four corners of the document proffered and to other texts incorporated therein by reference. *McDaniel Partners, Ltd. v. Apache Deepwater, L.L.C.*, 441 S.W.3d 530, 533-34 (Tex.App.--El Paso 2014, pet. filed); *see also In re 24R, Inc.*, 324 S.W.3d at 567 ("Documents incorporated into a contract by reference become part of that contract."). Only if a contract's fully integrated terms are ambiguous will we consider conflicting extrinsic evidence that shed lights on the parties' intent. *McDaniel Partners*, 441 S.W.3d at 533-34. "An unambiguous contract will be enforced as written, and parol evidence will not be received for the purpose of creating an ambiguity or to give the contract a meaning different from that which its language imports." *David J. Sacks, P.C.*, 266 S.W.3d at 450. This rule extends to other conflicting agreements. "If a contract is unambiguous, the parol evidence rule precludes consideration of evidence of prior or contemporaneous agreements unless an exception to the parol evidence rule applies." *Id.* at 451. While a court may consider "a prior or contemporaneous agreement that is both collateral to and consistent with a binding agreement, and that does not vary or contradict the agreement's express or implied terms or obligations[,]" prior or contemporaneous agreements that conflict with that contract at issue are inadmissible. *Id.*

Here, the Program Agreement is not ambiguous on its face. Its terms are definite, ascertainable, and not subject to more than one reasonable interpretation. Per the terms of the Program Agreement at bar, "tort claims, (including, but not limited to, claims for physical, mental or psychological injury, without regard to whether such injury was allegedly sustained in

13

the course and scope of employment . . . )" are subject to arbitration under the terms set out in the Program Agreement. It is undisputed that Rodriguez's pleadings allege tort claims that would fall within the Program Agreement's arbitral scope.

Further, the Program Agreement's language never explicitly mentions or incorporates the Benefit Plan's arbitration agreement by reference so as to create conflict on material terms. As such, the terms of the Program Agreement itself are those that govern here. However, the Program Agreement does apparently place the Benefit Plan in context when discussing scope, stating that "any claim by Employee for benefits under a plan or program which provides its own arbitration procedures" is excluded from the Program Agreement's arbitration coverage. That would assumedly mean that the Program Agreement's arbitration provisions would not apply to a claim arising under the Benefit Plan, which contains its own arbitration procedures.

A copy of the Benefit Plan's arbitration agreement does not appear in this record. Although the Defendants' Amended Motion to Compel Arbitration makes reference to attached Exhibits D, E, and F, which are the "Area Brands Texas Injury Benefits Summary Plan Description and Injury Benefit Plan," no such exhibits are actually attached. Absent that evidence, neither we nor the trial court can definitively establish whether Rodriguez's tort claim would fall within the Program Agreement's coverage exclusions. Even if Rodriguez could establish the terms of the Benefit Plan, the coverage exclusion is limited only to "any claim by Employee for benefits under a plan or program which provides its own arbitration procedure." Here, there is no indication that Rodriguez actually "claim[ed] . . . benefits under a plan or program" administered by Lucchese. Instead, the record evidence shows this is only a standard tort claim.

In short, Lucchese presented evidence of an unambiguous, presumptively valid

14

arbitration agreement that explicitly embraces tort claims against the company. Rodriguez, in turn, failed to provide evidence that the claims he presented would otherwise be excluded from coverage because they were subject to the Benefits Plan. As such, we find that both prongs of the arbitration test have been met: an arbitration agreement exists, and the dispute between the parties falls within its ambit. *See Delfingen*, 407 S.W.3d at 797. The trial court could not refuse to enforce the arbitration agreement on any defective formation grounds.

## B.
### *Defenses Against Enforcement*

Having determined that a valid arbitration contract formed, we next consider Rodriguez's arguments that the trial court was justified in denying Lucchese's motion to compel because he presented valid affirmative defenses to enforcement.

## 1.
## Unconscionability

In the trial court and on appeal, Rodriguez argues the contract should not be enforced against him because its terms are unconscionable. Lucchese contends that Rodriguez provided insufficient evidence to establish that arbitration agreement was unconscionable. Thus, the trial court's summary judgment denial could not have properly rested on those grounds. We agree.

### **Applicable Law**

"Agreements to arbitrate disputes between employers and employees are generally enforceable under Texas law; there is nothing *per se* unconscionable about an agreement to arbitrate employment disputes[.]" *In re Poly-America, L.P.*, 262 S.W.3d 337, 348 (Tex. 2008). The party seeking to invalidate the arbitration agreement bears the burden of proving unconscionability. *Vista Quality Mkts.*, 438 S.W.3d at 124.

"Unconscionability of an arbitration agreement may exist in one or both of two forms:

15

(1) procedural unconscionability, which refers to the circumstances surrounding the adoption of the arbitration provision, and (2) substantive unconscionability, which refers to the fairness of the arbitration provision itself." *ReadyOne Indus., Inc. v. Flores*, 460 S.W.3d 656, 666-67 (Tex.App.--El Paso 2014, pet. denied).

We measure unconscionability in light of the totality of the circumstances and from the point the contract formed. *Delfingen*, 407 S.W.3d at 798. "The grounds for substantive abuse must be sufficiently shocking or gross to compel the court to intercede, and the same is true for procedural abuse—the circumstances surrounding the negotiations must be shocking." *Id.* In deciding whether a contract is procedurally unconscionable, "we must examine (1) the entire atmosphere in which the agreement was made; (2) the alternatives, if any, available to the parties at the time the contract was made; (3) the non-bargaining ability of one party; (4) whether the contract was illegal or against public policy; and (5) whether the contract is oppressive or unreasonable." *Id*. [Internal quotation marks omitted]. The critical inquiry in reviewing an agreement for substantive unconscionability "is whether the arbitral forum in a particular case is an adequate and accessible substitute to litigation, a forum where the litigant can effectively vindicate his or her rights." *In re Olshan Found. Repair Co.*, L.L.C., 328 S.W.3d 883, 894 (Tex. 2010)(orig. proceeding). "That inquiry is not satisfied by speculation but by specific proof in the particular case of the arbitral forum's inadequacy." *Venture Cotton Co-op. v. Freeman*, 435 S.W.3d 222, 232 (Tex. 2014).

**Analysis**

On appeal, Rodriguez does not argue that the arbitral forum is somehow inadequate or unfair. Instead, he focuses exclusively on the process by which Lucchese obtained his consent to arbitration. As such, Rodriguez presents only procedural unconscionability grounds in support

of the trial court's judgment and not substantive unconscionability grounds. We focus our analysis accordingly.

Rodriguez maintains that we should affirm the trial court's judgment because Lucchese's "unusually unclean hands," as demonstrated by the fact it presented an alternate arbitration agreement after being unable to compel arbitration under another agreement, strongly insinuates wrongdoing that rises to the level of procedural unconscionability. But the fact that Lucchese may have later "discovered" another on-point arbitration agreement after we struck down the first agreement is irrelevant to the procedural unconscionability analysis. Our inquiry focuses solely on the surrounding circumstances at the time of contract formation. *Delfingen*, 407 S.W.3d at 801-03.

Here, Rodriguez provided no independent evidence regarding the circumstances of the contract formation process. Instead, he points to inconsistencies in Hilda Matthews' deposition testimony regarding her understanding of which arbitration agreement applied in the event of a workplace injury—the Benefits Plan or the Problem Resolution Program—as proof that Lucchese lured him into entering into the Program's arbitration agreement by having Matthews purportedly misrepresent the nature of the agreement and tell him it was an unimportant document. These testimonial inconsistencies are not enough to establish procedural unconscionability beyond mere conjecture, particularly when viewed in light of the fact that a signed acknowledgment page bearing Rodriguez's signature appears in the record. This suggests that even if Matthews misrepresented the terms of the agreement, Rodriguez presumably had the opportunity to review the actual agreement and verify its subject matter before assenting. "We presume a party, like [Rodriguez], who has the opportunity to read an arbitration agreement and signs it, knows its contents." *EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 90 (Tex. 1996).

17

Absent any other evidence, we cannot say the circumstances surrounding Rodriguez's signing of the Program Agreement indicated procedural unconscionability. *Compare Delfingen*, 407 S.W.3d at 801-03 (procedural unconscionability found where company affirmatively misrepresented contents of English-language arbitration agreement to Spanish-speaking employee, obtained his signature on the English-language agreement based on those misrepresentations, then never provided employee with copy of agreement in either English or Spanish). In sum, there is insufficient evidence to uphold the trial court's judgment on the basis of unconscionability.

**2.**
*Waiver and Estoppel*

Finally, Rodriguez maintains that we can uphold the trial court's judgment on the basis that Lucchese waived its ability to compel arbitration under the Program when it already attempted to unsuccessfully compel arbitration under the Benefit Plan. We have already rejected Rodriguez's waiver and estoppel points in a previous appeal, and decline to further address these merits of these issues under law of the case.

The law of the case doctrine holds that questions of law decided in one appeal govern the case throughout subsequent stages of litigation, including later appeals. *Justice Bail Bonds v. Samaniego*, 68 S.W.3d 811, 813 (Tex.App.--El Paso 2001, pet. denied). Application of this doctrine is discretionary and is "merely a practice to ensure consistency in court decisions" and "not a limit to the power of courts." *Telles v. Samaniego*, No. 08-02-00234-CV, 2003 WL 22254711, at *4 (Tex.App.--El Paso Sept. 30, 2003, no pet.)(mem. op.). "Although appellate courts have discretion to depart from the doctrine in exceptional or urgent situations, we must be mindful of the public policy underlying law of the case; to prevent useless relitigation of issues already decided, to insure consistency, and promote judicial economy." *Tomaszewicz v. Wiman*,

18

No. 08-00-00034-CV, 2002 WL 397003, at *2 (Tex.App.--El Paso Mar. 14, 2002, no pet.)(not designated for publication). The doctrine does not apply "if the issues or facts presented in successive appeals are not substantially the same as those involved in the first decision" or if "the prior appellate ruling is clearly erroneous." *Id.*

We previously decided that neither waiver nor estoppel precluded Lucchese from moving to compel arbitration when we reversed the trial court's strike order. *See Rodriguez*, 388 S.W.3d at 362-64. Nothing in the record indicates that the parties' respective positions changed meaningfully on remand. As such, law of the case will apply here. The trial court's judgment cannot be upheld on waiver or estoppel grounds.

## CONCLUSION

Appellant established the existence of a binding arbitration agreement not subject to any valid defenses. The trial court erred by failing to enforce this agreement.

We reverse the trial court's judgment and remand for further proceedings.


July 29, 2015
                                                          YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rodriguez, J., and Barajas, Senior Judge
Barajas, Senior Judge (Sitting by Assignment)

19