

NUMBER 13-15-00098-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

HUDSON INSURANCE
COMPANY,                                                              Appellant,

v.

BRUCE GAMBLE FARMS,
JIM GAMBLE FARMS, BRIAN
JONES FARMS, & CROP GUARD
GROUP, INC.,                                                         Appellees.

On appeal from the 357th District Court
of Cameron County, Texas.

# MEMORANDUM OPINION

Before Justices Garza, Benavides, and Longoria
Memorandum Opinion by Justice Longoria

Appellant Hudson Insurance Company (Hudson) challenges the trial court's order denying its motions to compel arbitration of the lawsuit filed by Bruce Gamble Farms, Jim Gamble Farms, Brian Jones Farms (collectively, the "Farmer Appellees"), and of Crop Guard Group, Inc.'s cross-petition against Hudson for indemnity. We reverse and remand.

## I. BACKGROUND[1]

The multiple-peril crop insurance policies at issue in this case were issued by Hudson, a private insurance company, but reinsured by the Federal Crop Insurance Corporation (FCIC). We begin with a brief explanation of the hybrid legal status of such policies.

Congress created the FCIC as a wholly-owned corporation within the Department of Agriculture and made it responsible for administering a federal system of crop insurance. 7 U.S.C.A. § 1503 (West, Westlaw through P.L. 114-61). The FCIC both provides crop insurance directly to farmers and contracts with approved private insurers to permit them to issue the same crop insurance policies. *Id.* § 1507(c) (West, Westlaw through P.L. 114-61). The approved private insurers are then reinsured by the FCIC. *Alliance Ins. Co. v. Wilson*, 384 F.3d 547, 549–50 (8th Cir. 2004). The Risk Management Association, a division of the Department of Agriculture which manages the FCIC, writes the terms of both types of policies—titled the "Basic Provisions"—and publishes them in the Code of Federal Regulations. *See* 7 C.F.R. § 457.8 (West, Westlaw through 80 F.R. 64298). The Basic Provisions "may not be waived or varied in any way by [the insurer],

---

[1] We address a companion case with similar facts but different issues and parties in *Hudson Insurance Co. v. BVB Partners,* No. 13-15-00163-CV, 2015 WL _____ (Tex. App.—Corpus Christi Nov. 5, 2015, no pet. h.) (mem. op.).

2

[the insurer's] insurance agent or any other contractor or employee of [the insurer] or any employee of USDA unless the policy specifically authorizes a waiver or modification by written agreement."[2]  *Id.* § 457.8 ¶ 1.

Under the Basic Provisions, a planting of an insured crop in a particular county qualifies for one of a series of unit systems:  "basic units," "whole farm units," "enterprise units," or "optional units."  *Id.*  A planting qualifies as an enterprise unit if it:  (1) contains all of the farmer's insured crop in that county, (2) is planted in two or more sections[3]; and (3) at least two of those sections contain the lesser of either:  (i) 20 acres of the insured crop or (ii) 20% of the entire acreage of the farmer's insured crop planted in that county. *Id.* § 457.8 ¶ 34(a)(4)(i), (ii).  Whether a unit of planting complies with the third requirement can determine whether that unit is eligible for coverage of a loss known as a prevented planting.[4]  The Basic Provisions provide that Hudson will deduct from the farmer's premium any prevented planting payments due to the farmer.  *Id.* § 457.8 ¶ 2(e).  A unit of planting which does not comply with the requirements of section 34(a)(4)(i) and (ii) is not eligible for a prevented planting payment.  *Id.* § 457.8 ¶ 17(f)(1).

Starting in 2011, appellees Bruce Gamble Farms and Brian Jones Farms obtained multiple-peril crop insurance policies from Hudson through appellee CropGuard Group,

---

[2] Because the Farmer Appellees' policies tracked the Basic Provisions in all relevant parts, we will cite to the Basic Provisions for ease of reference.

[3] A section, for these purposes, is "a unit of measure under a rectangular survey system describing a tract of land usually one mile square and containing approximately 640 acres."  7 C.F.R. § 457.8 ¶ 1 (West, Westlaw through 80 F.R. 64298).

[4] A prevented planting occurs when an insured farmer fails to plant the insured crop by a specific date "due to an insured cause of loss that is general to the surrounding area and that prevents other producers from planting acreage with similar characteristics."  *Id.*

3

Inc. ("CropGuard"), Hudson's insurance agent.[5]  Appellee Jim Gamble Farms obtained multiple-peril crop insurance coverage from Hudson through CropGuard beginning in 2012.  Each policy reproduced the Basic Provisions in all relevant respects and renewed automatically each year until terminated.  *See id.* § 457.8 ¶ 2(a).

In 2013, the Farmer Appellees allegedly asked CropGuard if, under the 2013 terms of the policies, prevented planting coverage was still unavailable for plantings which did not comply with section 34(a)(4)(i) and (ii) of the Basic Provisions.[6]  CropGuard referred the question to a Hudson representative, who allegedly informed the Farmer Appellees that the requirement was not in effect for the 2013 crop year.  The Farmer Appellees did not plant their insured crops in the way required by section 34(a)(4)(i) and (ii).  Each of the Farmer Appellees later made a prevented planting claim on their insured crop, but Hudson denied each claim because appellees' plantings did not qualify for prevented planting coverage.  *See id.* § 457.8 ¶ 17(f)(1) (providing that prevented planting coverage is not available for crops where the insured crop is not planted in two or more sections and does not otherwise comply with section 34(a)(4)(i) and (ii)).  Hudson calculated each Farmer Appellee's premium using a different unit system and without deducting any prevented planting payment.  The Farmer Appellees assert that each of their individual premiums were higher than if they had qualified for a prevented planting payment.[7]

The Farmer Appellees filed suit against Hudson and CropGuard Group, Inc.,

---

[5] In 2005, Hudson's agent was Crop Guard Insurance Agency, LLC.  In 2010, the owners of that entity created CropGuard Group, Inc.  We discuss the differences between the two entities below in Part IV of this opinion, but the distinction is not relevant for purposes of the Farmer Appellees' issues.

[6] We take the factual allegations in this paragraph from the Farmer Appellees' live petition.

[7] The Farmer Appellees alleged in their First Amended Petition that the premiums were higher by approximately $40,000 for Bruce Gamble Farms, $84,000 for Brian Jones Farms, and $80,000 for Jim Gamble Farms.

4

alleging causes of action for breach of contract, breach of the duty to act in good faith, multiple violations of various sections of article 21.21 of the Texas Insurance Code and related administrative regulations, violations of sections 17.46 and 17.50 of the Texas Deceptive Trade Practices Act, and that they were entitled to treble damages. *See* TEX. INS. CODE ANN. § 541.051 (West, Westlaw through 2015 R.S.) (codifying the current version of article 21.21); TEX. BUS. & COM. CODE ANN. §§ 17.46, 17.50 (West, Westlaw through 2015 R.S.). CropGuard filed a third-party petition against Hudson alleging that CropGuard was entitled to common-law contribution and indemnity in the event that CropGuard was found liable to the Farmer Appellees.

Hudson filed two motions to compel arbitration, one addressed to the Farmer Appellees and the other to CropGuard. In the motion to compel directed to the Farmer Appellees, Hudson alleged that each of the crop insurance policies at issue contained an arbitration clause governed by the Federal Arbitration Act (FAA) and that the clause encompassed the Farmer Appellees' claims. The Farmer Appellees responded that the arbitration clause was unconscionable because none of them possessed a copy of the full crop insurance contract at the time they entered into the contracts. In a supplemental response, the Farmer Appellees argued that the arbitration clause was unenforceable because it was insufficiently conspicuous.

The motion to compel addressed to CropGuard argued that Hudson and CropGuard were parties to a 2009 Independent Crop Insurance Agency Agreement (the "2009 Agreement") which contained a valid arbitration clause that covered CropGuard's claim for indemnity. CropGuard responded that Hudson had not proved an arbitration agreement between them because the signatories to the 2009 Agreement were Hudson

5

and Crop Guard Insurance Agency, LLC ("CGIA"), a legally separate entity from CropGuard Group. CropGuard admitted that it later entered into separate agreements with Hudson regarding the payment of commissions, but asserted that none of the later agreements contained an arbitration clause or incorporated the 2009 Agreement.

After considering the motions, responses, pleadings, and evidence on file, the trial court denied both of Hudson's motions in a single written order. Hudson filed this interlocutory appeal. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.016 (West, Westlaw through 2015 R.S.).

## II. STANDARD OF REVIEW AND APPLICABLE LAW

We review the trial court's ruling denying a motion to compel arbitration for abuse of discretion. *Beldon Roofing Co. v. Sunchase IV Homeowners' Ass'n, Inc.*, No. 13-14-00343-CV, ___ S.W.3d ___, ___, 2015 WL 3523157, at *5 (Tex. App.—Corpus Christi June 4, 2015, no pet.). Under this standard, "we defer to the trial court's factual determinations if they are supported by evidence, but we review the trial court's legal determinations de novo." *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding).

When evaluating a motion to compel arbitration, courts determine first whether a valid arbitration agreement exists between the parties and then whether the agreement covers the claims raised in the case. *In re D. Wilson Const. Co.*, 196 S.W.3d 774, 781 (Tex. 2006) (orig. proceeding). If the court concludes that an agreement to arbitrate exists, a strong federal presumption in favor of arbitration arises "such that myriad doubts—as to waiver, scope, and other issues not relating to enforceability—must be resolved in favor of arbitration." *In re Poly-Am., L.P.*, 262 S.W.3d 337, 348 (Tex. 2008)

6

(orig. proceeding).  If the trial court finds both that an agreement to arbitrate exists and that the claims asserted are within the agreement's scope, the court must compel arbitration unless the party resisting arbitration proves an affirmative defense.  *In re Odyssey Healthcare, Inc.*, 310 S.W.3d 419, 422 (Tex. 2010) (per curiam) (orig. proceeding).

### III. FARMER APPELLEES' CLAIMS

The Farmer Appellees' crop insurance policies each contained an arbitration clause, which reads in relevant part:

> If you and we fail to agree on any determination made by us except those specified in section 20(d) or (e), the disagreement may be resolved through mediation in accordance with section 20(g).  If resolution cannot be reached through mediation, or you and we do not agree to mediation, the disagreement must be resolved through arbitration in accordance with the rules of the American Arbitration Association (AAA).

*See* 7 C.F.R. § 457.8 ¶ 20(a).  By its first three issues, Hudson argues that the trial court abused its discretion in denying its motion to compel arbitration of the Farmer Appellees' claims.  We will address only the two sub-issues of Hudson's first issue that relate to the arguments that the Farmer Appellees made to the trial court.  We do not address the other arguments because we may not uphold a trial court's order denying arbitration on a ground that was not first presented to that court.  *See Richmont Holdings, Inc. v. Superior Recharge Sys., L.L.C.*, 392 S.W.3d 633, 635 (Tex. 2013) (per curiam) (holding that the court of appeals erred when it upheld the trial court's denial of a motion to compel on an argument that was not presented to the trial court); *see also* TEX. R. APP. P. 33.1.

### A. Is the Agreement to Arbitrate Unconscionable?

By its first sub-issue, Hudson asserts that the trial court abused its discretion to the extent that it concluded that the arbitration clause was unconscionable.  We agree.

7

Texas courts recognize two forms of unconscionability: substantive and procedural. *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 677 (Tex. 2006) (orig. proceeding). "Substantive unconscionability refers to the fairness of the arbitration provision itself, whereas procedural unconscionability refers to the circumstances surrounding adoption of the arbitration provision." *Id.* Whether an agreement is unconscionable is a question of law that we review de novo. *In re Poly-Am., L.P.*, 262 S.W.3d at 349. The party seeking to avoid arbitration has the burden of establishing that the agreement to arbitrate was unconscionable at the time it was formed. *Id.*

The Farmer Appellees alleged that the arbitration agreement was substantially unconscionable because they did not have a copy of the Basic Provisions at the time that they entered into the crop insurance contracts with Hudson. We interpret the Farmer Appellees as asserting procedural unconscionability because their argument goes to the circumstances surrounding the adoption of the arbitration agreement. *See In re Palm Harbor Homes, Inc.*, 195 S.W.3d at 677. Taking all allegations as true, we conclude that the Farmer Appellees have not established that the arbitration agreement was procedurally unconscionable. As a general rule, courts presume that a party who signed a contract was aware of and consented to each contractual term. *Nat'l Prop. Holdings, L.P. v. Westergren*, 453 S.W.3d 419, 425 (Tex. 2015) (per curiam). A party who signs a contract containing an arbitration clause is presumed to be aware of the existence of the clause. *See EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 90 (Tex. 1996) (orig. proceeding); *Lucchese Boot Co. v. Rodriguez*, No. 08-14-00230-CV, ___ S.W.3d ___, ___, 2015 WL 4571555, at *9 (Tex. App.—El Paso July 29, 2015, no pet. h.); *Serv. Corp. Int'l. v. Lopez*, 162 S.W.3d 801, 810 (Tex. App.—Corpus Christi 2005, no pet.) (combined

orig. proceeding and interlocutory appeal). The exact documents seen by the Farmer Appellees at the time they entered into the crop insurance contracts with Hudson is not clear from the record. However, even if Hudson had not provided a copy of the full contract to the Farmer Appellees before they obtained coverage with Hudson, none of the Farmer Appellees asserted that they were unaware of the Basic Provisions or that the Basic Provisions were unavailable for them to review. Two of the Farmer Appellees averred in affidavits to the trial court that they obtained a copy of the Basic Provisions upon request when the dispute with Hudson first arose.[8] Furthermore, appellee Bruce Gamble Farms specifically admitted in that affidavit that it received policy declaration sheets from Hudson notifying Bruce Gamble Farms that its coverage was active for a particular year. The policy declaration sheets in the record specifically reflect that it forms only a "part of" the policy provisions. This notation arguably put appellee Bruce Gamble Farms on notice of the Basic Provisions. *See Sw. Health Plan, Inc. v. Sparkman*, 921 S.W.2d 355, 358 (Tex. App.—Fort Worth 1996, no writ) (concluding that an arbitration agreement in a government-run health care insurance policy was not unconscionable when a "Summary of Benefits" referred the insured to the full agreement and the insured could "easily have obtained a copy" of the full plan after enrollment).

On the record before us, we conclude that the Farmer Appellees have not carried their burden to establish that the arbitration clause in their crop insurance contracts was unconscionable. *See EZ Pawn Corp.*, 934 S.W.2d at 90; *Lucchese Boot Co.*, ___ S.W.3d at ___, 2015 WL 4571555, at *9; *Serv. Corp. Int'l*, 162 S.W.3d at 810. We sustain Hudson's first sub-issue.

---

[8] The two appellees who received copies of the Basic Provisions upon request were Bruce Gamble Farms and Jim Gamble Farms.

9

## B. Was the Arbitration Clause Insufficiently Prominent?

By its second sub-issue, Hudson asserts that the trial court abused its discretion if it accepted the argument that the arbitration clause was insufficiently conspicuous within each contract. We agree.

The Farmer Appellees' argument refers to a now-repealed provision of the Texas General Arbitration Act which made a contractual arbitration clause unenforceable unless a notice of the clause was either typed in underlined capital letters on the first page of the contract or prominently rubber-stamped there. *See* Act of May 28, 1979, 66th Leg., R.S., ch. 702, § 2, *repealed by* Act of May 27, 1987, 70th Leg., 1st C.S., ch. 817, § 1, sec. 1. The Texas Legislature repealed this provision more than two decades ago, and the Farmer Appellees do not explain how it is applicable to this case. The trial court abused its discretion to the extent it relied on this statute when denying Hudson's motion to compel arbitration. We sustain Hudson's second sub-issue. Our disposition of Hudson's two sub-issues makes reaching the remainder of Hudson's first issue and all of its second and third issues unnecessary. *See* TEX. R. APP. P. 47.1.

## IV. CROPGUARD

Hudson argues in its fourth issue that the trial court abused its discretion by denying its motion to compel because a valid and enforceable agreement exists between them and covers CropGuard's third-party claims. By its fifth issue, Hudson argues that CropGuard must arbitrate even if it is not a signatory because it received substantial benefits from the 2009 Agreement. We will address Hudson's fifth issue first because it is dispositive.[9]

---

[9] We assume for purposes of this analysis only that Hudson did not prove that CropGuard Group, Inc. was a signatory to the 2009 Agreement.

10

## A.  Applicable Law

As a general rule, a party must sign a contract containing an arbitration agreement to be bound by it.  *In re Rubiola*, 334 S.W.3d 220, 224 (Tex. 2011) (orig. proceeding). However, the Texas Supreme Court has recognized that non-signatories may be required to arbitrate according to a contractual arbitration clause when principles of contract law or agency would bind a non-signatory to a contract in general.  *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 738 (Tex. 2005) (orig. proceeding).  Whether a non-signatory may be required to arbitrate through one of those theories is a question of law that we review *de novo.  Cappadonna Elec. Mgmt. v. Cameron County*, 180 S.W.3d 364, 370 (Tex. App.—Corpus Christi 2005, no pet.).

One of the theories recognized by the Texas Supreme Court under which a non-signatory must arbitrate according to a contract is "direct benefits estoppel."  *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d at 738.  Under this theory, a plaintiff who seeks a direct benefit from a contract "is estopped from simultaneously attempting to avoid the contract's burdens, such as the obligation to arbitrate disputes."  *Id.* at 739.  Texas courts have recognized that a non-signatory can seek a direct benefit from a contract in two ways. The first is by filing a lawsuit which seeks benefits flowing directly from the terms of a contract.  *Id.*  The second is if a non-signatory to a contract consistently and knowingly insists that others treat it as a party.  *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 135 (Tex. 2005).  A non-signatory who consistently asked to be treated as a party during the life of the contract will be estopped from turning "its back on the portion of the contract, such as the arbitration clause, that it finds distasteful."  *Id.* (internal citation omitted); *see ENGlobal U.S., Inc. v. Gatlin*, 449 S.W.3d 269, 275 (Tex. App.—Beaumont 2014, no pet.).

11

**B. Analysis**

The 2009 Agreement provides in relevant part that CGIA will serve as Hudson's agent for producing and servicing multiple-peril and named-peril crop insurance policies. CGIA will receive a commission for each policy that results in Hudson fully collecting a premium. The agent's commissions will be calculated "as specified in attached commission schedule(s)." Dan Gasser, a Senior Vice President at Hudson, testified by affidavit that in February of 2012, CropGuard Group signed and returned five documents to Hudson: (1) the "Independent Agent 2012 Crop Hail Commission Agreement"; (2) the "Electronic Processing Addendum"; (3) the "Profit Share Schedule"; (4) the "Multiple-Peril Crop Insurance Commission Schedule" (the "2012 Schedule"); and (5) the "Addendum to the Multiple-Peril Crop Insurance Commission Schedule." Each of these documents related to the role and responsibilities of Hudson's agent under the 2009 Agreement, but CropGuard executed each of these documents in its own name and not CGIA's. Gasser testified that he understood by this and by the fact that CropGuard was headquartered at the same address as CGIA that CropGuard was CGIA's new name. Gasser further testified that Hudson paid CroupGuard Group $1,638,619 in commissions under the 2009 Agreement between the effective date of the 2012 Commission Schedule and the date the 2009 Agreement was terminated in 2014.

CropGuard argues that it did not insist on being treated as a party to the 2009 Agreement but rather that the 2012 Schedule is an independent contract appointing it Hudson's agent and obligating Hudson to pay it commissions. However, we agree with Hudson that the 2012 Schedule cannot stand alone as such a contract. The best indication of the intent of the parties to a written contract is the language they chose to

use, informed by the facts and circumstances surrounding the execution of the instrument within the limits of the parol evidence rule. *See Americo Life, Inc. v. Myer*, 440 S.W.3d 18, 22 (Tex. 2014). None of the language Hudson and CropGuard used in the 2012 Schedule creates an agency relationship or an obligation for Hudson to pay commissions to CropGuard. Rather, the 2012 Schedule implicitly assumes that the agency relationship—and Hudson's obligation to pay commissions—is already in place and sets the percentage rates for CropGuard's commissions on certain types of policies. The 2009 Agreement also specifically contemplates that commission percentages will be calculated according to attached "schedule(s)," and the 2012 Schedule is titled "Multiple Crop Insurance Commission Schedule for the 2012 Independent Crop Agency Agreement."[10] Furthermore, the 2012 Schedule uses several capitalized terms of art and acronyms such as "Agent," "Company," "MPCI," "FCIC," and "SRA," but defines none of them. The 2009 Agreement expressly defines each term of art used in the 2012 Schedule. Based on all the foregoing, we conclude that the parties did not intend for the 2012 Schedule to be a stand-alone agreement but rather one that sets the rates for the commissions due to CropGuard under the 2009 Agreement. *See id.*

In sum, we conclude that Hudson established that CropGuard insisted that it be treated as a party to the 2009 Agreement. CropGuard essentially stepped into CGIA's role as Hudson's agent under the 2009 Agreement and continued in that role until the 2009 Agreement was terminated. Hudson also established that CropGuard received a substantial benefit in the form of over a million dollars in commissions under the 2009 Agreement. By consistently insisting that Hudson treat it as a party to the 2009

---

[10] Both Hudson and CropGuard agree that a superseding 2012 Agency Agreement was never executed by Hudson, CropGuard, or CGIA.

13

Agreement, CropGuard cannot now escape the 2009 Agreement's arbitration clause. *See In re Weekley Homes, L.P.*, 180 S.W.3d at 135; *ENGlobal U.S., Inc.*, 449 S.W.3d at 275. We sustain Hudson's fifth issue.

## V. Conclusion

We reverse the trial court's order and remand for entry of an order compelling the parties to arbitration.

NORA L. LONGORIA
Justice

Delivered and filed the
5th day of November, 2015.