YVONNE T. RODRIGUEZ, Justice
In this contract case, Joe Bob Wells and Melody Wells ("Mr. Wells" and "Mrs. Wells" individually, collectively, "Appellants") appeal the denial of their Motion for Judgment Notwithstanding the Verdict ("JNOV"). Appellants filed suit against Arabella Minerals & Royalties, a limited liability company, Clint Chapman, and Jason Hoisager ("Arabella," "Chapman," and "Hoisager" individually, collectively the "Appellees") claiming breach of contract for the sale of a land interest. The breach of contract claim against Arabella was tried to a jury. The jury found Arabella did not agree to purchase Appellants' interest in the land and further, awarded Appellants zero damages. The trial court rendered judgment on the jury's verdict and denied the Appellants' motion for JNOV and new trial. Appellants now appeal the trial court's denial of their motion for JNOV and motion for new trial. We affirm.
BACKGROUND
Appellants own a one-fourth, undivided interest of the surface estate of 320 acres in Reeves County, Texas. Arabella sent Appellants a letter expressing interest in purchasing the Wells' interest in this land. Mr. Wells contacted Arabella and spoke *518 with Clint Chapman, a then-employee of Arabella who purchased mineral interests and had authority to negotiate transactions involving land and mineral interests on behalf of Arabella. Appellants' interest is limited to the surface estate and they have no interest in the mineral estate. The property is mineral-classified, which means the State of Texas owns the mineral estate.
Chapman and Mr. Wells, thereafter, began oral negotiations for the purchase of the Wells' interest. After negotiating for several days, Chapman and Mr. Wells reached a price of $750,000 for the Wells' interest. During their oral negotiations, the parties did not discuss whether the land was mineral-classified or if any conflict existed regarding the potential purchase. In fact, Chapman's understanding was that it was a "straight up mineral deal" and was unaware the land was classified mineral interest. Arabella's president, Hoisager, through Chapman, orally approved the sale price, but did not authorize Chapman to purchase the Wells interest. According to Arabella their offer to Appellants was subject to confirming the chain of title, verifying the Wells' interest, performing their due diligence and obtaining investor's participation in the transaction. Arabella insisted they communicated these conditions of the proposed sale repeatedly to Mr. Wells. No formal written contract of the sale of Appellants' interests to Arabella was ever executed. At trial, Mr. Wells said "[a]ll I had was their word...."
Mr. Wells was anxious to close the sale and called Chapman once or twice a week. Chapman reminded him the deal would only go forward once Arabella completed their due diligence. In November 2012, Mr. Wells called Chapman stating he was coming in to Arabella's office to close the deal. Chapman advised Mr. Wells they could not close that day. Nonetheless, Mr. Wells drove to Arabella's office with the intent of finalizing the sale. In an effort to placate Mr. Wells, Chapman presented Mr. Wells with a mineral deed, prepared by Arabella. Mr. Wells executed the mineral deed on that same day at Arabella's office. Chapman, having the authorization to conduct this specific transaction, explained to Mr. Wells that Mrs. Wells was also required to sign the deed. In addition, the deed needed to be notarized and thus, the sale of Appellants' interest could not be completed that day. Mrs. Wells signed the deed the next day. However, the deed was executed for the mineral interest of the land only, in which Appellants held no ownership interest. Chapman told Wells after the deed was fully executed to hold on to it until the real property transaction was completed. Chapman's position was because Appellants did not own a mineral interest in the land, the deed was void and could not convey anything.
Subsequently, in anticipation of closing on the land sale and in conducting its due diligence, Arabella became aware of and informed Mr. Wells of a potential conflict of interest regarding their purchase of the Wells' surface land interest. Hoisager, an officer and director of various companies, owned both Arabella and Arabella Petroleum LLC, a separate and distinct entity. Arabella Petroleum was operating, by assignment, a mineral lease from the State of Texas, on the property in which Appellants' held an undivided 25 percent interest in the surface estate only. Hoisager recognized possible violations arising from companies of common ownership that hold interests in the surface estate, acting as the State's agent while operating a mineral lease from the State of Texas on the same land.[1] Arabella engaged *519 an attorney to determine if this potential conflict would prohibit their purchase of Appellants' interest. Mr. Wells was told of the possible conflict which could prohibit Arabella from purchasing Appellants' interests and Arabella's decision not to proceed with the sale pending an answer from their attorney.
After Appellants executed the mineral interest deed to Arabella, Mr. Williams of Cheyenne Oil Company called Mr. Wells regarding the possible purchase of the Wells' surface property interest. Mr. Wells told them it was sold. However, Mr. Wells told Williams if he could meet Arabella's offer and write him a check that day he would sell it to Cheyenne. Wells testified that Chapman told him that he may want to look for other buyers if Arabella could not close on the property. Chapman felt Wells was attempting to pressure Arabella into closing on the property. Hoisager testified that Wells told Arabella he had had other offers. Hoisager understood Wells was told that it may be easier for another buyer to purchase Appellants' property interest because other buyers would not have Arabella's conflict of interest.
In December 2012, Mr. Wells on several occasions requested a written agreement that they were going to close on their oral agreement to buy Appellants' property interests. Chapman's response to Wells was that Arabella was unable to comply because the conflict issue had not been resolved.
In January of 2013, Mr. Wells contacted Chapman requesting a letter confirming the sale for alleged tax purposes. Mr. Wells explained to Chapman that the Wells' accountant had requested the memorialization of the transaction so as to avoid the capital gains tax increases that were taking place. After consulting with Hoisager, Chapman provided Mr. Wells with a letter in Arabella letterhead stating:
On November 13, 2012, Arabella Minerals & Royalties and Mr. Wells, came to the agreement of $750,000 for the purchase of surface property in the E/2 of Section180, Bock 13, H&GN RR Co. Survey, containing 320 acres in Reeves County, Texas.
Respectfully,
/signed/
Jason Hoisager
Chapman sent the letter to Mr. Wells, who then faxed it to his lawyer within a few hours that day. The following week, Wells' lawyer sent a letter to Arabella demanding them to either close the real estate transaction or face legal action. After receiving the demand letter, Arabella told its attorney to stop investigating the potential conflict because Arabella no longer wanted to proceed under threat of a lawsuit.
At trial, Hoisager confirmed he signed the letter, however, did not believe that he was creating an enforceable agreement. He further explained that had he known he was signing a contractual obligation, he would not have signed the letter. Hoisager testified that he was not concerned about the letter's wording because he was under the impression that it was only for the benefit of Mr. Wells' taxes and not the courtroom. He explained he had never discussed the transaction with Appellants and that he was only seeking to accommodate Appellants' tax situation.
Chapman corroborated Hoisager, that it was Chapman's belief that the purpose of Arabella's letter to Mr. Wells was for tax reasons and tax reasons only. He stated that while the letter confirmed the purchase price, its only purpose was for the *520 reason given by Mr. Wells: tax purposes. Chapman testified that Mr. Wells never indicated the letter would be used for any other purpose. Moreover, Chapman testified that before Hoisager signed the letter, he and Hoisager discussed the fact that the letter was not a contract to close and was only to be used for Mr. Wells' tax purposes. Both Chapman and Hoisager testified to their belief that their letter to Wells was not a contract.
At trial, Mr. Wells testified that his accountant, in fact, never requested the letter. Wells explained the letter was not for tax purposes but he had obtained it for written confirmation of the sale. Wells insisted the Appellants' property interest was sold when he signed the mineral interest deed.
Wells explained that he had previously conducted four to five real estate transactions. He understood some of the legal requirements of real estate transactions (such as the fact that Texas' community property laws require a spouse be a necessary party to his real estate transactions and certain statute of frauds requirements). Further, he testified he also understood some of the procedural requirements to real estate transactions (such as when and how to use an escrow agent).
In their third amended original petition, Appellants claimed breach of contract, fraud, and promissory estoppel. After granting a directed verdict for Appellees on the promissory estoppel and fraud claims, the trial court submitted Appellants' breach of contract claim against Arabella to the jury. Three questions where submitted to the jury. First, whether Arabella agreed to purchase the Wells' interest in the land, to which the jury answered "No." The second involved compliance, which was only relevant if the jury answered in the affirmative to the first question. Third, the jury answered "None" in response to any damages suffered by the Wells. Having found that Arabella did not agree to purchase the Wells' interest in the land and that Appellants did not sustain any damages, the trial court rendered judgment on the jury's verdicts and denied the Wells' JNOV motion and Motion for New Trial. This appeal followed.
On appeal, in the first sub-issue of Point of Error One, Appellants argue the trial court should have granted the JNOV motion because the evidence is conclusive that a contract existed because Arabella orally agreed to purchase the Wells' land on November 13, 2012; the agreement was put in writing January 2, 2013 and signed by Arabella; and Appellants performed (or tendered performance) under the agreement. In their second sub-issue, Appellants maintain that Arabella breached the contract as a matter of law. In their third sub-issue, Appellants assert that as a matter of law the Statute of Frauds was satisfied with the written memorandum provided by Arabella for Appellants' alleged tax issue. Appellants second point of error asserts the denial of their motion for new trial arguing the jury's verdict is legally and factually insufficient.
In response, Appellees' contend that the trial court correctly denied the JNOV motion because Appellants failed to establish that there was a meeting of the minds or mutual consent-as a matter of law, therefore, there was no enforceable agreement, oral or written. Moreover, Appellees' argue that Arabella's letter is inadequate to satisfy the Statute of Frauds since the property description in the letter is inconsistent with the Wells' actual real property interest subject of this suit. Further, Appellees assert Appellants do not challenge the jury's finding of zero damages on appeal, so any error of the jury's failure to find a contract existed is harmless. Lastly, Appellees maintain that even if the judgment *521 in their favor is reversed, the judgment as to Hoisager should be affirmed because the breach of claim against him was never submitted to the jury and thereby waived.
DISCUSSION
In their three sub-issues of point of error one, Appellants claim that the trial court erred in denying the Wells' JNOV motion arguing that the evidence produced at trial conclusively establishes that as a matter of law: (1) a contract was formed; (2) the contract was breached; and (3) the Statute of Frauds was satisfied. Second, Appellants' motion for new trial should be granted because the evidence supporting the jury's verdict that no agreement was formed and the Wells suffered zero damages is legally and factually insufficient.
The threshold issue on appeal for breach of contract is whether a contract was even formed. We find that as a matter of law, no contract was formed and the jury's verdict is supported by legal and factual sufficient evidence, therefore, we do not reach Appellants' second and third sub-issues of Point of Error One.
Standard of Review
A court of appeals reviews an appellant's challenge to the trial court's grant or denial of a motion for JNOV under the legal sufficiency standard. City of Keller v. Wilson , 168 S.W.3d 802, 823 (Tex. 2005). When such a ruling is based on a question of law, we review that aspect of the ruling de novo. See In re Humphreys , 880 S.W.2d 402, 404 (Tex. 1994) ("[Q]uestions of law are always subject to de novo review."). If a party is challenging a jury finding regarding a claim upon which that party had the burden of proof, the complaining party must demonstrate that "the adverse finding is against the great weight and preponderance of the evidence." Dow Chemical Co. v. Francis , 46 S.W.3d 237, 242 (Tex. 2001). In addition, when a party with the burden of proof at trial brings a legal sufficiency issue complaining of an adverse finding, the party must show that the evidence conclusively establishes all vital facts in support of the finding sought by the party. Dow Chemical , 46 S.W.3d at 241.
We must first examine the record of evidence supporting the adverse finding, ignoring all evidence and inferences to the contrary. Id. "If more than a scintilla of evidence supports the jury's findings, the jury's verdict ... must be upheld." Wal-Mart Stores, Inc. v. Miller , 102 S.W.3d 706, 709 (Tex. 2003). Evidence is conclusive "only if reasonable people could not differ in their conclusions, a matter that depends on the facts of each case." City of Keller , 168 S.W.3d at 816. "The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." Id. at 827. In evaluating the legal sufficiency of the evidence to support a finding, we must review all of the evidence in the light most favorable to the prevailing party, crediting favorable evidence if a reasonable fact finder could, and disregarding contrary evidence unless a reasonable fact finder could not. Id. at 827. An appellate court must weigh all evidence, and can set aside a verdict "only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust." Dow Chemical, 46 S.W.3d at 241.
Applicable Law
A plaintiff alleging breach of contract has the burden to prove: (1) a valid contract existed; (2) the plaintiff performed or tendered performance; (3) the defendant breached the contract; and (4)
*522 the plaintiff sustained damages as a result of the defendant's breach. Chance v. Elliot & Lillian, LLC , 462 S.W.3d 276, 283 (Tex.App.-El Paso 2015, no pet.). The following elements are required for the formation of a valid contract: (i) an offer; (ii) acceptance in strict compliance with the terms of the offer; (iii) a meeting of the minds; (iv) each party's consent to the terms; and (v) execution and delivery of the contract with the intent that it be mutual and binding. Karns v. Jalapeno Tree Holdings, L.L.C. , 459 S.W.3d 683, 692 (Tex.App.-El Paso 2015, pet. denied). In light of the parties' arguments, we will first focus on element (iii).
Contract Creation: Element (iii) Meeting of the Minds
"A meeting of the minds is necessary to form a binding contract." David J. Sacks, P.C. v. Haden , 266 S.W.3d 447, 450 (Tex. 2008). "Although often treated as a distinct element, meeting of the minds is a component of both offer and acceptance measured by what the parties said and did and not on their subjective state of mind." [Internal quotations omitted]. Jalapeno , 459 S.W.3d at 692. "In order to be legally binding, a contract must be sufficiently definite in its terms so that a court can understand what the promisor undertook." [Internal citations omitted]. Lucchese Boot Co. v. Rodriguez , 473 S.W.3d 373, 386 (Tex.App.-El Paso 2015, no pet.). "The material terms of the contract must be agreed upon before a court can enforce the contract." [Internal quotations omitted]. Id. "Each contract should be considered separately to determine its material terms." [Internal quotations omitted]. Id.
The "Oral" Agreement
Appellants posit the oral agreement between Mr. Wells and Chapman created a valid, enforceable agreement. Where one party attests to a contractual agreement while the other vigorously denies any meeting of the minds, determining the existence of a contract is a factual inquiry. Hallmark v. Hand , 885 S.W.2d 471, 476 (Tex.App-El Paso 1994, writ denied). Every contract requires a meeting of the minds, so the "meeting" necessarily is a question of fact. Id.
Here, we find the evidence does not demonstrate a meeting of the minds between Appellants and Appellees. Mr. Wells contacted Arabella in response to a letter. In his negotiations with Mr. Wells, Chapman was unaware the land was mineral classified. Chapman believed he was negotiating for the purchase of the mineral estate. At trial, and again in their brief, Appellants are unclear as to whether they had an oral agreement, when the mineral deed was signed, or when Arabella faxed the letter signed by Hoisager to Mr. Wells. While both parties agreed as to the portion of the property Appellants owned and the price, that is 25 percent and $750,000; however, Appellants did not own the mineral estate. Arabella, clearly hesitated to go forward without conducting its due diligence, and Arabella informed Mr. Wells of the delay and why. A jury could easily find this credible and favorable evidence of lacking the "meeting of the minds" element necessary to form a valid, enforceable agreement. So does this Court.
The "Written" Agreement
The parties next argue whether the letter from Arabella, signed by Hoisager created a valid, enforceable agreement. While a meeting of the minds dispute is usually treated as a question of fact, we will treat it as a question of law if the intent of the parties is clear from the face of the document. Jalapeno , 459 S.W.3d at 692. Relevant to this allegedly written contract, *523 the terms must be sufficiently definite and agreed to by the parties before a court can enforce a contract. Lucchese Boot Co. , 473 S.W.3d at 386, citing T.O. Stanley Boot Co., Inc. v. Bank of El Paso , 847 S.W.2d 218, 221 (Tex. 1992).
The Appellants aver that the letter from Arabella sufficiently states the terms to establish that the alleged contract is a contract as a matter of law. Appellees respond that the letter is insufficient to serve as a contract since the letter does not describe the Wells' exact real property interest in the property, rather, the letter describes the "surface property ... containing 320 acres. ... In addition, Appellees' argue that at trial, and again in their brief, Appellants were inconsistent and ambiguous as to when an enforceable agreement was created: the oral agreement, the mineral deed Mr. Wells signed, or the letter sent by Arabella. Lastly, Appellees' urge the proposition that the letter's purpose was not to create a contractual obligation, rather, it was to satisfy the Appellants' income tax purposes. We agree with Appellees. The discrepancy between the property description in the letter and the real property interest actually owned by the Wells, Mr. Wells' confusion as to when the agreement became enforceable, and the differing rationales pertaining to the letter's purpose not only show that the jury could reasonably conclude Arabella never agreed to purchase the Wells' interest in the land, but precludes us from finding that the parties here had a meeting of the minds.
Contract Creation: Conclusion
Because a reasonable fact finder had enough evidence to find there was no meeting of the minds and the Appellants failed to establish there was, as a matter of law, we find this agreement unenforceable. Further, we find the evidence is legally and factually sufficient to support the verdict.
CONCLUSION
We affirm the trial court's judgment.
Hughes, J., Not Participating

The owner of the surface estate of mineral classified land becomes an agent of the State of Texas for purposes of leasing land for oil and gas. See generally Ussery v. Hollebeke , 391 S.W.2d 497, 499 (Tex.Civ.App.-El Paso 1965, writ ref'd n.r.e.).