# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-21-00116-CV

---

**Wilfred Warren Sheppard, Appellant**

**v.**

**Tiffany Shellman and The Attorney General of Texas, Appellees**

---

**FROM THE 169TH DISTRICT COURT OF BELL COUNTY
NO. 272,488-C, THE HONORABLE GORDON G. ADAMS, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Appellant Wilfred Warren Sheppard, proceeding pro se, appeals from the district court's order modifying his child-support obligations and confirming the amount of support that he owed in arrears. In a single issue on appeal, Sheppard asserts that the district court abused its discretion in confirming his arrearages. We will affirm the district court's order.

## BACKGROUND

Sheppard and appellee Tiffany Shellman are the parents of A.V., a daughter born on March 20, 2008. A.V. resides with Shellman. On July 26, 2016, the district court issued its final order establishing Sheppard's parentage of A.V. and ordered him to pay $521.12 per month in child support and $56 per month in medical support. The district court also rendered judgment that Sheppard owed $12,718.88 in child-support arrears and $56 in medical-support arrears. Sheppard did not appeal the 2016 order.

In October 2019, the Social Security Administration found that Sheppard had been disabled since June 30, 2016, and was entitled to receive Social Security Disability Insurance (SSDI). In June 2020, appellee the Attorney General of Texas (the OAG) sent an administrative writ of withholding to the Social Security Administration (SSA) and notices of lien and levy to Sheppard's bank to recover the amount of unpaid child support that Sheppard owed. In July 2020, A.V. began receiving Sheppard's SSDI benefits in the amount of $1,161.00 per month. On July 6, 2020, Sheppard filed a motion to withdraw the administrative writ of withholding and a request for child-support modification. In the motion, Sheppard argued that he no longer owed child support because A.V. was now receiving a monthly derivative benefit of $1,161.00 from his SSDI, which exceeded his monthly support obligations. Sheppard also argued that he and Shellman had a written agreement, "sent via text," in which Sheppard agreed to release Shellman from an October 2014 forcible-entry-and-detainer judgment rendered against her in the amount of approximately $10,000, plus interest, in exchange for Shellman agreeing to credit the amount of child support that Sheppard owed in arrears by $10,000.

The district court held hearings on Sheppard's motion on September 29, 2020, and March 1, 2021. No evidence was presented at the September hearing. At the March hearing, Sheppard re-urged the arguments that he had made in his motion, summarized above, and also requested "a credit given for whatever time [he] provided support" prior to 2016. Shellman's counsel represented that Shellman had not received any of Sheppard's SSDI payments until July 2020, after the issuance of the administrative writ of withholding. Counsel represented further, "For the period of December 2019 to June 2020, Mr. Sheppard was receiving these benefits." Sheppard provided no testimony or other evidence refuting Shellman's representations. The only exhibit admitted into evidence was a financial activity

2

report prepared by the OAG showing the total amount of child-support and medical-support arrears that Sheppard had owed every month beginning in 2016, when he was first ordered to pay the arrearages. The report showed that at the end of June 2020, the last month before the issuance of the administrative writ of withholding, Sheppard owed $38,821.25 in child-support arrears and $1814.76 in medical-support arrears.

At the conclusion of the March 2021 hearing, the district court took the matter under advisement and later issued its Order in Suit for Modification of Support Order and to Confirm Support Arrearage. In the order, the district court found and confirmed that as of June 30, 2020, Sheppard owed $38,821.25 in child-support arrears and $1,814.76 in medical-support arrears. The district court also found that A.V. was receiving $1,161.00 per month from Sheppard's SSDI, which exceeded Sheppard's monthly support obligation. As a result, the district court set Sheppard's current child support at $0 per month, retroactive to July 1, 2020. The district court also made the following findings of fact on its docket sheet:

(1) The Court finds that there has been a material and substantial change of circumstances that justifies a reduction of current child support; [t]he Court further finds that beginning in July of 2020, Mother started receiving monthly disability payments from SSA for the benefit of the child and said payments were based on Father's disability; [t]hus, Father's child support is reduced to Zero Dollars ($0) per month beginning retroactively on July 1, 2020.

(2) The Court further finds and confirms that per State's Exhibit No. 1, the child-support arrearage balance as of June 30, 2020 was $38,821.25, and the medical-support arrearage balance was $1,814.76; and

(3) The State is requested to apply any and all lump sum amounts being held, if any, and from whatever source, to the appropriate arrearage balance, pay or credit Mother the proper amounts for the child, and to return any and all overpayments to Father.

3

This appeal followed.

## STANDARD OF REVIEW

We review a trial court's decisions regarding child support, including confirmation of child-support arrearages, for abuse of discretion. *See Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990); *In re R.D.E.*, 627 S.W.3d 798, 800 (Tex. App.—Corpus Christi–Edinburg 2021, pet. denied); *Cline v. Cline*, 557 S.W.3d 810, 813 (Tex. App.—Houston [1st Dist.] 2018, no pet.). "The test for abuse of discretion is whether the trial court acted without reference to any guiding rules or principles; in other words, whether the act was arbitrary or unreasonable." *Worford*, 801 S.W.2d at 109; *see R.D.E.*, 627 S.W.3d at 800; *see also Iliff v. Iliff*, 339 S.W.3d 74, 78 (Tex. 2011) ("A trial court has discretion to set child support within the parameters provided by the Texas Family Code."). A trial court also abuses its discretion by failing to analyze or apply the law correctly. *Iliff*, 339 S.W.3d at 78 (citing *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding)).

## DISCUSSION

In his sole issue on appeal, Sheppard asserts that the district court abused its discretion in confirming the amount of his support arrearages.[1] Specifically, he argues that his

---

[1] In his brief, Sheppard labels his "issue presented" as "whether the trial court abused its discretion by denying Defendant's Motion to Recover Child Support in Excess of Support Order . . . and Motion for Default Judgment." Sheppard's motion to recover child support, which he filed after the September 2020 hearing, repeated the arguments that he had made in his motion to withdraw administrative writ and request for child support modification. Thus, our analysis applies to both Sheppard's motion to withdraw administrative writ and to his motion to recover child support.

In Sheppard's motion for default judgment, which was filed prior to the September hearing, he claimed that Shellman had failed to file an answer to his pleadings. However, the

"child support obligation ended on June 30, 2016, the date [his] Social Security Disability Insurance was established . . . and [A.V.] started receiving $1161.00 in auxiliary benefits," which was more than Sheppard's child-support payments that were ordered to begin on July 1, 2016. In Sheppard's view, "Since June 30, 2016 supersedes July 1, 2016, [his] child support obligation as of July 1 would be zero." Sheppard further argues that he and Shellman had entered into an agreement via text message in which Shellman had agreed to credit Sheppard's child-support arrearages by approximately $10,000 in exchange for Sheppard agreeing not to collect on an approximately $10,000 forcible-entry-and-detainer judgment that had been rendered against Shellman.

**Social Security**

"In rendering a judgment confirming the amount of arrearages, the court may not reduce or modify the amount of child support arrearages, but in confirming the amount of arrearages, the court may allow a counterclaim or offset as provided in Title 5 of the family code." *R.D.E.*, 627 S.W.3d at 800 (citing Tex. Fam. Code § 157.263). At issue in this case are the SSDI payments that A.V. is now receiving on a monthly basis.

For purposes of calculating child support, "[s]ocial security payments are a substitute for a disabled parent's earnings." *Id.* at 801 (citing *In re Rich*, 993 S.W.2d 272, 274

_____

record reflects that Shellman filed an answer and appeared at the hearing with counsel. Thus, as the district court informed Sheppard at the hearing, "[W]hat we have is a contested hearing on modification of support." Sheppard makes no argument on appeal challenging the district court's implicit denial of his motion for default judgment. Sheppard's actual argument on appeal is in substance a challenge to the district court's confirmation of his support arrearages. Accordingly, we will address that argument. *See Ridge Nat. Res., L.L.C. v. Double Eagle Royalty, L.P.*, 564 S.W.3d 105, 130 (Tex. App.—El Paso 2018, no pet.) (addressing "the actual substance of the argument" raised on appeal rather than party's "fram[ing]" of argument); *Franks v. Roades*, 310 S.W.3d 615, 625 n.6 (Tex. App.—Corpus Christi–Edinburg 2010, no pet.) (addressing "substance" rather than "label" of appellate arguments).

5

(Tex. App.—San Antonio 1999, no pet.); *In re Allsup*, 926 S.W.2d 323, 328 (Tex. App.—Texarkana 1996, no writ)). "An order to pay child support is for the benefit of the child, and if the child support is paid through the receipt of social security benefits on account of a parent, then the purpose of the support order is accomplished." *Rich*, 993 S.W.2d at 275. Therefore, "if a child for whom the obligor owes child support *receives a lump-sum payment* as a result of the obligor's disability and that payment is made to the obligee as the representative payee of the child, the obligor is entitled to a credit." Tex. Fam. Code § 157.009 (emphasis added). "The credit . . . is equal to the amount of the lump-sum payment and shall be applied to any child support arrearage and interest owed by the obligor on behalf of that child at the time the payment is made." *Id.*

However, in this case, there is no evidence that A.V. received a lump-sum payment that would entitle Sheppard to a credit against the amount of his arrearages. Instead, the record reflects that A.V. is receiving monthly SSDI payments withheld from Sheppard. "When a child receives a monthly amount from the social security administration as a result of an obligor parent's disability, as opposed to a lump-sum disability payment, courts subtract this amount from the monthly child support payment mandated by the guidelines." *R.D.E.*, 627 S.W.3d at 801. That is what the district court did here. Consistent with the child-support guidelines, *see* Tex. Fam. Code § 154.132,[2] it found that A.V. was receiving $1,161.00 per month from

---

[2] Section 154.132 provides:

> In applying the child-support guidelines for an obligor who has a disability and who is required to pay support for a child who receives benefits as a result of the obligor's disability, the court shall apply the guidelines by determining the amount of child support that would be ordered under the child support guidelines and subtracting from that total the amount of benefits or the value of the benefits

Sheppard's SSDI, which exceeded Sheppard's monthly support obligation, and thus set Sheppard's current child-support obligation at $0 per month, retroactive to July 1, 2020, the date when A.V. first began receiving the payments.

Sheppard argues that the district court should have gone further and made his current child-support obligation retroactive to June 30, 2016, the date that the Social Security Administration found that Sheppard was disabled. Sheppard claims that this is authorized by Section 154.012, which provides that,

> If an obligor is not in arrears and the obligor's child support obligation has terminated, the obligee shall return to the obligor a child support payment made by the obligor that exceeds the amount of support ordered, regardless of whether the payment was made before, on, or after the date the child support obligation terminated.

Tex. Fam. Code § 154.012. However, Section 154.012 applies only if (1) the obligor is not in arrears and (2) the obligor's child support obligation has terminated. *See id*. Sheppard is in arrears and his child-support obligation, although set currently in the amount of zero dollars, has not yet terminated. *See id*. § 154.006 (listing circumstances under which child-support order may terminate, including child turning eighteen years of age). Thus, Section 154.012 does not apply to Sheppard at this time, and there is no other statutory provision that authorizes Sheppard to receive credit for his arrearages based on the evidence presented in the court below. Again, Section 157.009 does not apply here because there is no evidence that A.V. received a lump-sum

---

paid to or for the child as a result of the obligor's disability.

Tex. Fam. Code § 154.132.

7

payment for Sheppard's disability, *see In re A.J.R.*, No. 09-09-00382-CV, 2010 WL 4262007, at *5 (Tex. App.—Beaumont Oct. 28, 2010, no pet.) (mem. op.), and Section 154.132 applies only to Sheppard's support obligations after A.V. began receiving SSDI payments, *see In re G.L.S.*, 185 S.W.3d 56, 58–59 (Tex. App.—San Antonio 2005, no pet.).

**Alleged agreement between Sheppard and Shellman**

Sheppard also asserts that he is entitled to a credit against the amount of his arrearages because of an agreement he had made with Shellman. In 2014, Sheppard obtained a forcible-entry-and detainer judgment against Shellman. The judgment ordered Shellman to pay Sheppard $10,042.75, plus interest, until the judgment was paid in full. On January 20, 2020, Shellman allegedly texted Sheppard the following message: "I'll take off the $10,000 from the apartment so you don't have to pay that. And you take off the judgment and pay the rest [of] what is owed. That was the deal. Stick to it. Then maybe when you are in complete compliance you can have her." Sheppard responded by sending Shellman an image of the forcible-entry judgment and texting her the following message: "I am not sending u this to upset u . . . just wanted to clarify what u text[ed] earlier . . . the judgment is for $10,042.75 at a rate of 5% interest monthly until paid in full as of October 20, 2014 . . . it's January 20, 2020 and has not been paid." Sheppard characterizes this text exchange as an agreement that Sheppard "would be given equitable credit for the $10,000 judgment in lieu of Child Support Arrearages and in turn [Sheppard] would release the judgment awarded against [Shellman]."

There are at least three problems with Sheppard's reliance on the text messages. First, although Sheppard attached to his motion what appears to be a copy of the messages, they were not authenticated or otherwise admitted into evidence during the hearings, and neither

8

Sheppard nor Shellman provided any testimony relating to the alleged agreement. Sheppard also provided no documentation that he had in fact released Shellman from the forcible-entry-and-detainer judgment. Thus, the district court would not have abused its discretion in finding that there was no evidence that Shellman had agreed to credit Sheppard's child-support arrearages or that Sheppard had released Shellman from her financial obligations under the judgment as Sheppard claimed.

Second, even if the text messages had been admitted into evidence, the district court would not have abused its discretion in finding that the messages, standing alone, did not demonstrate the existence of a binding contract. *See St. David's Healthcare P'ship, LP v. Fuller*, 627 S.W.3d 707, 710 (Tex. App.—Austin 2021, pet. filed) ("Under Texas law, a binding contract requires: (1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; (5) consideration; and, if the contract is in writing (6) execution and delivery of the contract with the intent that it be mutual and binding."). Among other deficiencies, the precise terms of the agreement are unclear from Shellman's message, and Sheppard's text message, asking Shellman to "clarify" the meaning of her message, does not demonstrate the requisite "meeting of the minds" between Shellman and Sheppard. *See Wells v. Hoisager*, 553 S.W.3d 515, 522 (Tex. App.—El Paso 2018, no pet.).

Third, even if Shellman had agreed to credit the amount that Sheppard owed in arrears, the district court would not have abused its discretion in declining to enforce the agreement on the ground that such agreements generally violate Texas public policy. *See Williams v. Patton*, 821 S.W.2d 141, 145 (Tex. 1991) (holding that private agreements between parents attempting to modify amount of child-support arrearages violated "a strong, long-standing policy of this state to protect the interests of its children" and thus were void and

unenforceable); *see also Ochsner v. Ochsner*, 517 S.W.3d 717, 723–24 (Tex. 2016) (explaining that in "situations where child-support obligors have attempted to privately agree with the obligee to reduce—or indeed entirely eliminate—the obligation," trial courts cannot "enforce these private agreements, or rely on them to reduce the arrearages"); *Office of Att'y Gen. v. Scholer*, 403 S.W.3d 859, 866 (Tex. 2013). ("[E]xcept for the very narrow circumstance recognized by law—the obligee's relinquishment of possession [of the child] and the obligor's provision of support—[a parent] may not rely on the other parent's actions to extinguish his support duty.").

**Support provided prior to 2016**

Sheppard also asserted at the hearing that the amount he owed in arrears should be offset by the amount of support that he had provided voluntarily to A.V. between the date of her birth in 2008 and the date of the district court's 2016 support order. Sheppard raises similar assertions on appeal. However, as the district court admonished Sheppard throughout the proceedings, the amount he owed in arrears prior to 2016 had been determined in the district court's 2016 order, which Sheppard did not appeal, and it is too late for Sheppard to challenge that order now. *See In re M.K.R.*, 216 S.W.3d 58, 62–66 (Tex. App.—Fort Worth 2007, no pet.) (explaining doctrine of res judicata and holding that "[a]s with other final, unappealed judgments that are regular upon their face, res judicata applies to arrearage judgments"); *In re Nichols*, 51 S.W.3d 303, 306–07 (Tex. App.—San Antonio 2000, no pet.) (holding that "res judicata precludes a trial court from applying a retroactive credit for social security benefits to a final arrearage judgment").

On this record, we cannot conclude that the district court abused its discretion in confirming the amount of Sheppard's arrearages.  We overrule Sheppard's issue on appeal.

**CONCLUSION**

We affirm the district court's modification order.

_____

Gisela D. Triana, Justice

Before Chief Justice Byrne, Justices Triana and Kelly

Affirmed

Filed:   December 8, 2021