

# NUMBER 13-24-00256-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

## IN THE MATTER OF THE MARRIAGE OF
## AMY MORGAN AND PETER MORGAN

---

## ON APPEAL FROM THE 360TH DISTRICT COURT
## OF TARRANT COUNTY, TEXAS

---

# MEMORANDUM OPINION

**Before Chief Justice Tijerina and Justices Peña and West
Memorandum Opinion by Chief Justice Tijerina**

Appellant/cross-appellee Peter Morgan (appellant) and appellee/cross-appellant Amy Morgan (appellee) appeal a final divorce decree. By two issues, appellant contends that the trial court improperly ordered him to reimburse appellee for the costs of electing to receive disability payments, and alternatively, even assuming the trial court had authority to divide disability retirement payments, "it could not do so in the absence of an agreement to do so in the [Mediated Settlement Agreement (MSA)]." Appellee contends

that the MSA is not enforceable due to a lack of a meeting of the minds, and we must remand the MSA to the trial court because it is ambiguous. We affirm as modified.[1]

## I. BACKGROUND

On May 11, 2023, the parties signed an MSA agreeing, in pertinent part, that appellee would receive "50% of the community portion of [appellant's] net disposable retired pay." Appellant asked the trial court to enter the MSA as the final divorce decree. Appellee argued the MSA was unenforceable because as written the MSA allowed appellant to waive his retirement pay to receive disability pay.

At a hearing on October 20, 2023, appellee requested that the trial court include language in the final divorce decree prohibiting appellant from waiving his military retirement pay to receive military disability, which is not divisible in a divorce. On January 12, 2024, the hearing on the parties' motions to sign the final divorce decree continued. Again, appellee argued that appellant could waive his retirement pay at any time and therefore unilaterally determine how long appellee received retirement payments. Appellee therefore again requested language in the final divorce decree stating that appellant must reimburse her any amount she loses if appellant decided to waive his retirement pay and collect military disability. Appellant opposed such language.

The trial court agreed with appellee and stated in the final divorce decree that the parties agreed to divide appellant's military retirement and "stipulate and agree [that appellant] shall not convert, buy civil service retirement or otherwise modify the terms or payment structure of his military retirement pay in any manner that will negatively impact"

---

[1] This appeal was transferred from the Second Court of Appeals in Fort Worth, Texas pursuant to an order issued by the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. § 73.001.

appellee's payments, and if appellant did any act that reduced appellee's "share of appellant's military retirement pay" by waiving his military pay for disability pay, appellant "shall make [appellee] whole by paying [her] directly that amount that [her] monthly payment is reduced by such action." This appeal followed.

## II. DISABILITY PAYMENTS

By his first issue, appellant contends that the trial court improperly prohibited him from converting his military retirement payments into disability payments and ordered that he reimburse appellee "for the costs of electing to receive disability retirement payments."

Trial courts are permitted to divide military retired pay in a divorce proceeding "in accordance with the law of the jurisdiction." *Gillin v. Gillin*, 307 S.W.3d 395, 397 (Tex. App.—San Antonio 2009, no pet.). However, the trial court may only divide disposable retired pay, which "excludes disability pay, including retirement benefits that may be waived in order to collect disability benefits." *Id.* at 397–98. "A divorce court cannot apportion military retirement pay which has been waived to receive Veterans Administration disability benefits." *Id.* at 398. A trial court cannot expressly or impliedly prohibit a retired military member from electing to waive his retirement pay to receive Veteran's Affairs disability benefits in the future. *Ex parte Burson,* 615 S.W.2d 192, 196 (Tex. 1981); *Gillin*, 307 S.W.3d at 398.

In *Freeman v. Freeman*, the San Antonio court of appeals determined that the divorce decree was erroneous because it limited the retired military member's right to waive some of his retirement pay and elect to receive VA disability benefits. 133 S.W.3d 277, 280 (Tex. App.—San Antonio 2003, no pet.). The court reasoned that "a Texas court cannot expressly or impliedly prohibit a retired service member from unilaterally waiving

3

some or all of his disposable retired pay after divorce in exchange for VA disability benefits." *Id.* (first citing *Ex parte Burson*, 615 S.W.2d at 196; and then citing *Limbaugh v. Limbaugh*, 71 S.W.3d 1, 17 (Tex. App.—Waco 2002, no pet.)).

Here, the trial court prohibited appellant from converting or modifying the terms of his retirement pay in a manner that would harm appellee, including waiving his retirement pay in exchange for non-divisible disability payments. Thus, the final divorce decree is erroneous because the trial court improperly prohibited appellant from unilaterally waiving some or all his retirement pay to collect disability. *See id.* at 280; *Gillin*, 307 S.W.3d at 398 (providing that "[a] divorce decree cannot restrict a service member's future right to waive retirement and elect disability Veteran's Administration benefits" and explaining that the order was therefore erroneous because it "provides that any election of benefits that may be made by [the retired military member] 'shall' not reduce the amount of retired pay awarded to [the ex-spouse], and specifically prohibits [the retired military member] from waiving military retired pay in order to receive disability benefits").

Next, in *Limbaugh*, the trial court attempted to prevent the retired military member "from unilaterally reducing his 'disposable retired pay' in the future by waiving" his retirement pay and electing to receive disability benefits by stating in the decree that if the retired military member should reduce his retirement pay, he would be required to pay his ex-spouse "the difference between the monthly payments she received at the time of the decree and the payments as reduced because of [the retired military member's] post-divorce election to receive additional VA disability benefits." *Limbaugh*, 71 S.W.3d at 17. The *Limbaugh* court concluded that the trial court could not require the retired military member to reimburse the payment amount to his ex-wife if he waived his retirement pay

4

and elected to receive disability pay because federal law properly gave the retired military member the right to do so. *Id.*

Here, the trial court included similar language requiring appellant to reimburse appellee if he modified his retirement pay by electing to receive non-divisible disability benefits. This language limits appellant's right to waive his retirement pay to receive disability and is therefore erroneous. *See id.*; *see also Ghrist v. Ghrist*, No. 03-05-00769-CV, 2007 WL 1372690, at *3 (Tex. App.—Austin May 11, 2007, pet. denied) (mem. op.) (determining that even though the parties agreed that the retired military member would reimburse his ex-wife if he elected to waive his retirement pay and receive disability benefits, the ex-wife was not entitled to reimbursement under federal law because she sought to directly or indirectly obtain a portion of the retired military member's "VA disability benefits, or to effectively prevent him from waiving his military retirement to obtain such benefits"). Appellee argues that other state courts have already concluded that the military member spouse can agree to reimburse the ex-spouse if he waives retirement pay to take disability. However, no Texas court has made this determination. *See Freeman*, 133 S.W.3d at 280; *Gillin*, 307 S.W.3d at 398 ("The first provision of the domestic relations order provides that any election of benefits that may be made by Kevin 'shall' not reduce the amount of retired pay awarded to Lori, and specifically prohibits Kevin from waiving military retired pay in order to receive disability benefits. The trial court erred in restricting Kevin's right to elect disability."); *Loria v. Loria*, 189 S.W.3d 797, 799 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (determining that divorce decree was erroneous because it stated that the military spouse agreed "not to take any action by merger so as to cause a limitation in the amount of the total disposable retired pay in

5

which member has a vested interest" which had "the impermissible effect of precluding appellant from choosing, as is his right, to waive a portion of his retirement pay for disability"); *see also Ghrist*, 2007 WL 1372690, at *3. Therefore, we decline to make such a conclusion. *See Loria*, 189 S.W.3d at 799 ("The Texas Supreme Court has recognized that a servicemember has the right, by federal law, to waive military retirement pay for disability pay, even though this means that the servicemember can effectively unilaterally modify a divorce decree insofar as it allocates income attributable to prior military service." (citing *Ex parte Burson*, 615 S.W.2d at 195–96)).

We sustain appellant's first issue.[2] Accordingly, we modify the judgment by omitting the following language:

> The parties further stipulate and agree that the Respondent shall not convert, buy civil service retirement or otherwise modify the terms or payment structure of his military retirement pay in any manner that will negatively impact the payment amounts to the Petitioner. Should the Respondent do an act that has the effect of reducing the Petitioner's share of the Respondent's military retirement pay received under Concurrent Retirement and Disability Pay (CRDP), Respondent shall indemnify and reimburse Petitioner for any such losses and consequential damages.

*See Limbaugh*, 71 S.W.3d at 18 (ordering that the divorce decree be modified by deleting the provision that required the husband to make direct payments to the wife if he waived his Navy retirement payments in exchange for an increase in veterans' disability benefits); *Gillin*, 307 S.W.3d at 398 (modifying the divorce decree by removing language that prohibited the retired military spouse from waiving his retirement pay to receive disability).

---

[2] Having sustained appellant's first issue, we need not address his second alternative issue as it is not dispositive. *See* TEX. R. APP. P. 47.1.

### III.    IRREVOCABLE MSA

By her first cross-issue, appellee contends that there was no meeting of the minds when the parties signed the MSA.

### A.    Applicable Law

Divorcing spouses may agree to the division of their community property by either executing a settlement agreement "which 'may be revised or repudiated before rendition of the divorce,'" or they "may choose to execute a settlement agreement" pursuant to § 6.602 of the Texas Family Code that is binding on the parties as soon as it is executed, and each party is "entitled to judgment on the agreement notwithstanding Rule 11, Texas Rules of Civil Procedure, or another rule of law." *Cayan v. Cayan*, 38 S.W.3d 161, 165. 166 (Tex. App.—Houston [14th Dist.] 2000, pet. denied); *see In re Joyner*, 196 S.W.3d 883, 890–91 (Tex. App.—Texarkana 2006, pet. denied) (noting that "the parties elect to make their agreement binding at the time of execution rather than at the time of rendering, thus creating a procedural shortcut for the enforcement of those agreements"). The Texas Family Code "does not authorize a court to modify an MSA, to resolve ambiguities or otherwise, before incorporating it into a decree." *Toler v. Sanders*, 371 S.W.3d 477, 480 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (concluding that the trial court's modifications to the MSA were reversable error where modifications "add terms, significantly alter the original terms, or undermine the intent of the parties"). "A[n MSA] under [§] 6.602 is 'more binding than a basic written contract' because, except when a party has procured the settlement through fraud or coercion, nothing either party does will modify or void the agreement 'once everyone has signed it.'" *Id.*

### B.    Discussion

7

The MSA in this case meets the requirements of § 6.602. *See* TEX. FAM. CODE ANN. § 6.602. The record shows that there is a prominent notice on the last page of the agreement in bold face underlined capital letters stating that the MSA is not subject to revocation, and the agreement is signed by both parties and their attorneys.[3] *See id.* § 6.602(b)(1)–(3). Because the agreement complied with § 6.602, appellee's unilateral attempt to revoke the MSA was ineffective, and both §§ 6.602(b) and 6.602(c) required the trial court to enter judgment on it despite appellee's attempted repudiation. *See id.* § 6.602(b), (c); *Mullins*, 202 S.W.3d at 876; *Cayan*, 38 S.W.3d at 165.

Moreover, the trial court did not allow the parties to present evidence regarding whether there had been a meeting of the minds. *See Wells v. Hoisager*, 553 S.W.3d 515, 522 (Tex. App.—El Paso 2018, no pet.) ("Every contract requires a meeting of the minds, so the 'meeting' necessarily is a question of fact."). Whether a meeting of the minds occurs is determined objectively by examining what the parties said and did rather than measuring the parties' subjective state of mind. *Id.* ("[M]eeting of the minds is measured by what the parties said and did and not on their subjective state of mind."); *Wal-Mart Stores, Inc. v. Lopez*, 93 S.W.3d 548, 556 (Tex. App.—Houston [14th Dist.] 2002, no pet.) ("The determination of a meeting of the minds, and thus offer and acceptance, is based

---

[3] The MSA states:

**THIS MEDIATED SETTLEMENT AGREEMENT IS NOT SUBJECT OT REVOCATION PURSUANT TO TFC §6.601-6.602 TPRC §154.021-154.073.**

**THE PARTIES SHALL BE ENTITLED TO A JUDGMENT ON THE MEDIATED SETTLEMEN AGREEMENT NOTWITHSTANDING RULE 11, TRCP OR ANY OTHER RULE OF LAW.**

**EACH PARTY STIPULATED[] AND AGREES THAT THEY HAVE ENTERED INTO THIS AGREEMENT FREELY AND VOLUNTARILY. THIS AGREEMENT IS NOT SUBJECT TO REVOCATION AND IS ENFORCEABLE AS A CONTRACT.**

on the objective standard of what the parties said and did—and not on their subjective state of mind." (first citing *Adams v. H & H Meat Prods., Inc.*, 41 S.W.3d 762, 771 (Tex. App.—Corpus Christi–Edinburg 2001, no pet.); and then citing *Angelou v. African Overseas Union*, 33 S.W.3d 269, 278 (Tex. App.—Houston [14th Dist.] 2000, no pet.))). The trial court must consider "the communications between the parties and the acts and circumstances surrounding those communications." *Id.* (first citing *Komet v. Graves*, 40 S.W.3d 596, 601 (Tex. App.—San Antonio 2001, no pet.) and then citing *Angelou*, 33 S.W.3d at 278). Accordingly, because the trial court did not hear evidence regarding a meeting of the minds, we are unable to conclude that the judgment should be reversed on that basis. *See Wells*, 553 S.W.3d at 522 ("Every contract requires a meeting of the minds, so the 'meeting' necessarily is a question of fact."). We overrule appellee's first cross-issue.[4]

## IV.   AMBIGUITY

By her second cross-issue, appellee contends the MSA is ambiguous. Appellee does not explain with citation to pertinent legal authority why the language in the MSA is ambiguous, she does not state which language results in two reasonable interpretations, and she does not state what those interpretations may be.[5] *See* TEX. R. APP. P. 38.1(i).

---

[4] We note that the Texas Supreme Court has disagreed with a lower court's determination that the MSA should be set aside simply because there was not a meeting of the minds. *Milner v. Milner*, 361 S.W.3d 615, 623 (Tex. 2012); *see also Matter of Marriage of Penafiel*, 633 S.W.3d 36, 44 (Tex. App.—Houston [14th Dist.] 2021, pet. denied) (explaining that an MSA may be set aside if it "is illegal in nature or procured by fraud, duress, coercion, or other dishonest means.").

[5] Appellee states: (1) "If the MSA is ambiguous, then the MSA should be set aside, and the case remanded to the trial court; (2) "Trial court noted that grammar of the sentence is confusing to the court and that might have a little bit of ambiguity"; and (3) "In this case, if the language used in the MSA gives rise to two reasonable interpretations, then the MSA is ambiguous, and the case should be remanded to the trial court and the parties could again attend mediation or proceed to trial." This is the extent of appellee's argument. Appellee does not state which sentence the trial court referenced when it made this comment.

We overrule appellee's second cross-issue.

## V. CONCLUSION

The trial court's judgment is affirmed as modified.

JAIME TIJERINA
Chief Justice

Delivered and filed on the
18th day of December, 2025.

---

Additionally, the trial court made a finding that the MSA is not ambiguous.

10